UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HARTFORD HEALTHCARE CORPORATION; HARTFORD HOSPITAL; THE HOSPITAL OF CENTRAL CONNECTICUT AT NEW BRITAIN GENERAL AND BRADLEY MEMORIAL; MIDSTATE MEDICAL CENTER; THE WILLIAM W. BACKUS HOSPITAL; and WINDHAM COMMUNITY MEMORIAL HOSPITAL, INC., | : : : : : : : : | CIVIL ACTION NO. |
| Plaintiffs, | : : : | OCTOBER 5, 2017 |
| -against- | : : | |
| ANTHEM HEALTH PLANS, INC., d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD, | : : : | |
| Defendant. | : : | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, Hartford HealthCare Corporation; Hartford Hospital; The Hospital of Central Connecticut at New Britain General and Bradley Memorial; MidState Medical Center; The William W. Backus Hospital; and Windham Community Memorial Hospital, Inc. (collectively, "Hartford HealthCare"), by their attorneys, Garfunkel Wild, P.C., for its Complaint against the Defendant, Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue Shield, alleges as follows:

## PRELIMINARY STATEMENT

1.     Hartford HealthCare is a fully integrated health system that provides a wide range of health care services to the residents of   Connecticut and beyond. Defendant is Connecticut's

largest health care insurer, covering over one million Connecticut residents, including most state employees.

2.      Hartford HealthCare brings this action to put a stop to Defendant's unlawful refusal to pay Hartford HealthCare directly for medically necessary emergency care that Hartford HealthCare's professional staff provides to Defendant's members and beneficiaries. Instead, in retaliation for Hartford HealthCare's recent decision to reject Defendant's offer of a new provider agreement containing unfairly low reimbursement rates, Defendant is insisting that it will only pay the patient, not Hartford HealthCare, for the medically necessary care that Hartford HealthCare provides to one of Defendant's members or beneficiaries.

3.      This puts an unfair and substantial administrative burden on both the affected patients *and* Hartford HealthCare. Rather than pay Hartford HealthCare directly for the care it provides -- which Defendant has done for decades -- "reimbursement" checks will be sent to patients, who, after suffering significant medical conditions, will have the burden of collecting those checks, cashing them, and making arrangements to pay Hartford HealthCare themselves. This process is time consuming, and fraught with risk of lost checks, mispayments, and other issues. The burden of appeal, follow-up, and reconciliation will be placed directly on patients who are in many cases medically fragile and in virtually all cases not prepared to handle these issues.

4.      Significant administrative burden will also be placed on Hartford HealthCare, who will be forced to wait significant time to receive reimbursement for services rendered, and be required to undertake dramatically increased follow-up efforts tracking down delayed, misplaced, lost, and wrongly cashed checks.

2

4620756v.4

5.      Tellingly, Defendant has yet to articulate any legitimate reason for changing the way it has made payments for medical necessary care for decades. This is not surprising because, as we explain in detail below, Defendant's actions in refusing to pay Hartford HealthCare directly for the care it provided Defendant's members and beneficiaries violate the Patient Protection and Affordable Care Act, 42 U.S.C. § 300gg-19a, the regulations issued to implement the Act, and Connecticut state law.

6.      For all these reasons, Hartford HealthCare is entitled to a declaration that Defendant's actions violate federal and state law, and an injunction compelling Defendant to directly pay Hartford HealthCare for the emergency medical care that it provides to Defendant's members and beneficiaries. Indeed, without such an injunction, Hartford HealthCare, and its patients, will be irreparably harmed through the imposition of unfair and substantial administrative burdens.

## THE PARTIES

7.      Plaintiff Hartford HealthCare Corporation is a not-for-profit corporation organized and existing under the laws of the State of Connecticut, with a principal place of business at One State Street, Hartford, Connecticut.

8.      Plaintiff Hartford Hospital is a not-for-profit corporation organized and existing under the laws of the State of Connecticut, with a principal place of business at 80 Seymour Street, Hartford, Connecticut.

9.      Plaintiff The Hospital of Central Connecticut at New Britain General and Bradley Memorial is a not-for-profit corporation organized and existing under the laws of the State of

Connecticut, with principal places of business at 100 Grand Street, New Britain, Connecticut, and 81 Meriden Avenue, Southington, Connecticut.

10.    Plaintiff MidState Medical Center is a not-for-profit corporation organized and existing under the laws of the State of Connecticut with a principal place of business at 435 Lewis Avenue, Meriden, Connecticut.

11.    Plaintiff The William W. Backus Hospital is a not-for-profit corporation organized and existing under the laws of the State of Connecticut with a principal place of business at 326 Washington Street, Norwich, Connecticut.

12.    Plaintiff Windham Community Memorial Hospital, Inc. is a not-for-profit corporation organized and existing under the laws of the State of Connecticut with a principal place of business at 112 Mansfield Avenue, Willimantic, Connecticut.

13.    Upon information and belief, Defendant, Anthem Health Plan, Inc., is a health insurer organized and existing under the laws of Connecticut that maintains a principal place of business at 108 Leigus Road, Wallingford, Connecticut 06492.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over Plaintiffs' federal law claims asserted in this lawsuit under 28 U.S.C. §§ 1331.

15.    This Court has jurisdiction over Plaintiffs' state law claims asserted in this lawsuit under the doctrine of supplemental jurisdiction codified in 28 U.S.C. § 1367.

16.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because Anthem resides in this District and the acts complained of have occurred within this District.

4

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### Hartford HealthCare Corporation

17.     Hartford HealthCare is a fully integrated health system that includes a tertiary-care teaching hospital, an acute-care community teaching hospital, an acute-care hospital and trauma center, two community hospitals, a behavioral health network, a multispecialty physician group, and related ancillary services.

18.     Specifically, Hartford HealthCare includes Hartford Hospital, a 163-year old institution that is the major teaching institution affiliated with the University of Connecticut Medical School; Backus Hospital in Norwich; the Hospital of Central Connecticut in New Britain; MidState Medical Center in Meriden; and Windham Hospital. All of these hospitals provide medically necessary emergency medical services to the residents of their communities. Some, like Hartford Hospital, are New England regional centers for emergency medical care.

19.     In three of these hospitals -- Hartford Hospital, the Hospital of Central Connecticut, and Backus Hospital -- Hartford HealthCare bills include charges for emergency medical physician services as a part of a bundled rate negotiated by Defendant.

### Defendant's Health Coverage

20.     Defendant, Anthem Health Plan, Inc., is, a subsidiary of Anthem, Inc., one of the nation's largest health benefits companies. One of eight Americans has health coverage through one of its affiliated plans.

21.     Doing business as Anthem Blue Cross and Blue Shield of Connecticut, Defendant is Connecticut's largest commercial health insurer. More than one million residents – including most state employees – have health coverage through Defendant.

4620756v.4

22.     For some of its health plans, Defendant serves as a traditional individual or group health insurer. For other of its health plans, Defendant services as claims administrator for self-insured employee benefit plans established pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.*

23.     Defendant's members and beneficiaries receive their heath care services through two categories of providers: network and out-of-network providers. Network providers become part of Defendant's networks by entering into participating provider agreements with Defendant. These provider agreements specify, among other things, the mutually agreeable rates at which the provider is to be reimbursed for health care services provided to Defendant's members and beneficiaries.

24.     On the other hand, out-of-network providers do not enter into participating provider agreements with Defendant. They are not members of any of Defendant's networks. For most health care services, Defendant's payment obligations are determined either by law or by the provisions of particular member's health plan at issue.

**Hartford HealthCare Ceases To Be One Of Defendant's Network Providers**

25.     For many years until September 30, 2017, Hartford HealthCare was one of Defendant's network providers. Defendant reimbursed Hartford HealthCare for the care that Hartford HealthCare provided to Defendant's members and beneficiaries at the rates set in the parties' participating provider agreement.

26.     The most recent participating provider agreement between Defendant and Hartford HealthCare expired on September 30, 2017.

6

27.     Because of Defendant's steadfast refusal to renew the participating provider agreement unless and until Hartford HealthCare agrees to unfairly – and catastrophically – low reimbursement rates, Hartford HealthCare was reluctantly forced to become an out-of-network provider for Defendant effective October 1, 2017.

28.     Although Defendant no longer has a participating provider agreement with Hartford HealthCare, Defendant nevertheless is obligated to provide reimbursement directly to Hartford HealthCare for emergency medical care rendered by Hartford HealthCare to Defendant's members and beneficiaries under federal and state law.

29.     Additionally, because patients routinely assign to Hartford HealthCare all rights they have as beneficiaries of Defendant's health plans, these assignments further obligate Defendant to reimburse Hartford HealthCare directly for covered health services it provides to these patients.

**Defendant's Refusal To Honor Its Direct Payment Obligations**

30.     For decades prior to October 1, 2017, Defendant directly paid Hartford HealthCare for health care services that Hartford HealthCare provided to Defendant's members and beneficiaries.

31.     Unfortunately, Defendant has announced that, starting October 1, 2017, it will no directly pay Hartford HealthCare for health care services that Hartford HealthCare provides to Defendant's members and beneficiaries.

32.     Instead, Defendant, starting October 1, 2017, will only pay its members and beneficiaries for health care services that Hartford HealthCare provided to them. It will then be

7

the responsibility of the members and beneficiaries to deposit these funds and make separate arrangements to pay Hartford HealthCare. Defendant has made it clear that it will play no role in the payment to Hartford HealthCare. Defendant also will not provide any information to Hartford HealthCare about payment status or related issues.

33.      Defendant has provided no legitimate justification for this dramatic change in its decades-old direct payment procedure. It is clear from the timing of this change – and the statements made by Defendant to Hartford HealthCare – that this change is simply and blatantly in retaliation for Hartford HealthCare's refusal to agree to Defendant's unfairly low proposed reimbursement rates.

34.      Defendant is stubbornly holding to this newly adopted procedure even after Hartford HealthCare pointed out to it that the federal Affordable Care Act, and its implementing regulations, require that Defendant directly pay Hartford HealthCare for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries.

35.      Specifically, the Affordable Care Act, 42 U.S.C. § 300gg-19a(b)(1)(ii)(I), provides that, if a health plan provides coverage for medically necessary emergency medical services rendered by network providers – as Defendant's health plans do – then it must provide similar coverage for medically necessary emergency medical services rendered by out-of-network providers. This is for the benefit of patients so that they are not forced to choose an in-network provider in an emergency crisis.

36.      And, in covering medically necessary emergency medical services rendered by out-of-network providers, the health plan cannot impose any more restrictions or limitations on

8

4620756v.4

that coverage than apply to medically necessary emergency medical services rendered by network providers. 42 U.S.C. § 300gg-19a(b)(1)(ii)(I).

37.     Likewise, the regulations implementing the Affordable Care Act provide that, in covering medically necessary emergency medical services rendered by out-of-network providers, a health plan cannot impose "any administrative requirement or limitation on coverage that is more restrictive than the requirements or limitations that apply to emergency services received from in-network providers."   26 C.F.R. § 54.9815-2719A(b)(2)(iii); *see also* 29 C.F.R. § 2590.715-2719A(b)(2)(iii); 45 C.F.R. § 147.138(b)(2)(iii).

38.     Finally, Connecticut General Statutes § 38a-477aa(b)(3)(A) provides that, if "emergency services [are] rendered to an insured by an out-of-network health care provider, such health care provider may bill the health carrier directly and the health carrier **shall** reimburse such health care provider . . ." (emphasis added).  The statute defines health care provider as "an individual licensed to provide health care services. . ." *Id.* § 38a-477aa(a)(4).

**Defendant's Refusal To Directly Pay Hartford
Health Care Imposes Significant Administrative Burdens**

39.     Here, by wrongly refusing to directly pay Hartford HealthCare for emergency medical services it provides to Defendant's members or beneficiaries – and instead only paying the Defendant's members or beneficiaries – Defendant is imposing an administrative requirement on out-of-network providers and their patients that is more restrictive, limiting, and burdensome than that imposed on network providers, whom Defendant will directly pay.

40. Specifically, under Defendant's new indirect payment scheme, Defendant will send "reimbursement" checks, along with explanations of benefits and other paperwork, to patients who have just recently required emergency medical services.

41. These patients – many of whom will still be suffering from severe medical conditions – will have the substantial burden of reviewing and interpreting the explanation of benefits and other paperwork, and then be forced to deposit the "reimbursement" checks (which will be made payable to the patients) in their own accounts.

42. The patients then will be required to turn around and make their own separate payment arrangements with Hartford HealthCare.

43. To the extent that Defendant's payment amount is incorrect or improper, it will be the patients' obligation to discern this from the confusing paperwork, and pursue any appeal or grievance rights on their own.

44. This process is time consuming, and fraught with risk of lost checks, mispayments, and other issues. The burden of appeal, follow-up, and reconciliation will be placed directly on patients who are in many cases medically fragile and in virtually all cases ill-equipped to handle these issues.

45. These significant and unjustified burdens that Defendant's indirect payment scheme will place on its members and beneficiaries will cause some patients to delay their emergency medical care, to seek care at hospitals farther away than Hartford HealthCare's facilities, or to seek care from an outpatient urgent care center when hospital care is medically necessary. This will cause Hartford HealthCare's patients to suffer irreparable harm.

4620756v.4

46.     Significant administrative burdens will also be placed on Hartford HealthCare under Defendant's indirect payment scheme.

47.     Specifically, Hartford HealthCare will be forced to wait significantly more time to receive payment for the medically necessary emergency medical services that it provided to Defendant's members or beneficiaries. Because there is a "middleman" involved in the process – the patient -- there is a dramatically increased chance that the payment due Hartford HealthCare will be lost, misdirected, or improperly retained before it reaches Hartford HealthCare.

48.     Moreover, because Hartford HealthCare will not be directly receiving the payment – and will otherwise be kept in the dark by Defendant about the entire reimbursement process – Hartford HealthCare will be forced to expend specific time, money, and effort in follow-up efforts to determine when its patients receive "reimbursement" payments from Defendant, and then go through the considerable burdens of making separate payment arrangements with patients, and educating them about appeal and other rights.

49.     The harm that Hartford HealthCare and its patients will suffer is inextricably intertwined, including because some patients will delay their care or seek care at other facilities. Thus, Hartford HealthCare will also suffer irreparable harm as a result of Defendant's indirect payment scheme.

50.     Given all this, Defendant's refusal to directly pay Hartford HealthCare – and thus unreasonably impose an administrative requirement on out-of-network providers and their patients that is more restrictive, limiting, and burdensome than that imposed on network providers – violates the Affordable Care Act, its implementing regulations, and Connecticut law.

4620756v.4

## FIRST CLAIM FOR RELIEF

51.     Hartford HealthCare repeats and re-alleges the allegations set forth above as if more fully set forth herein.

52.     Under the Affordable Care Act, 42 U.S.C.. § 300gg-19a(b)(1)(ii)(I), Defendant has a legal obligation to pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries, so as to avoid the imposition of an administrative requirement on an out-of-network provider and its patients that is more restrictive, limiting, and burdensome than that imposed on network providers.

53.     Likewise, under the Affordable Care Act's implementing regulations -- 26 C.F.R. § 54.9815-2719A(b)(2)(iii); *see also* 29 C.F.R. § 2590.715-2719A(b)(2)(iii); 45 C.F.R. § 147.138(b)(2)(iii) – Defendant has a legal obligation to pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries, so as to avoid the imposition of an administrative requirement on an out-of-network provider and its patients that is more restrictive, limiting, and burdensome than that imposed on network providers.

54.     Defendant has unequivocally announced that, starting October 1, 2017, it will no longer pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries.

55.     By reason of the foregoing, Defendant is imposing an administrative requirement on an out-of-network provider and its patients that is more restrictive, limiting, and burdensome than that imposed on network providers.

4620756v.4

56.     By reason of the foregoing, Defendant has violated Affordable Care Act, 42 U.S.C.. § 300gg-19a(b)(1)(ii)(I).

57.     By reason of the foregoing, Defendant has violated the Affordable Care Act's implementing regulations, 26 C.F.R. § 54.9815-2719A(b)(2)(iii); *see also* 29 C.F.R. § 2590.715-2719A(b)(2)(iii); 45 C.F.R. § 147.138(b)(2)(iii).

58.     For all the reasons set forth above, Hartford HealthCare is entitled to a declaration that Defendant's actions, as of October 1, 2017, in refusing to pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries – and imposing an administrative requirement on an out-of-network provider and its patients that is more restrictive, limiting, and burdensome than that imposed on network providers – violates the Affordable Care Act and its implementing regulations, and such other and further relief that the Court deems just, proper, and equitable..

## SECOND CLAIM FOR RELIEF

59.     Hartford HealthCare repeats and re-alleges the allegations set forth above as if more fully set forth herein.

60.     Under the Affordable Care Act, 42 U.S.C.. § 300gg-19a(b)(1)(ii)(I), Defendant has a legal obligation to pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries, so as to avoid the imposition of an administrative requirement on an out-of-network provider and its patients that is more restrictive, limiting, and burdensome than that imposed on network providers.

61.     Likewise, under the Affordable Care Act's implementing regulations -- 26 C.F.R. § 54.9815-2719A(b)(2)(iii); *see also* 29 C.F.R. § 2590.715-2719A(b)(2)(iii); 45 C.F.R. § 147.138(b)(2)(iii) – Defendant has a legal obligation to pay Hartford HealthCare directly for

13

medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries, so as to avoid the imposition of an administrative requirement on an out-of-network provider and its patients that is more restrictive, limiting, and burdensome than that imposed on network providers.

62.     Defendant has unequivocally announced that, starting October 1, 2017, it will no longer pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries.

63.     By reason of the foregoing, Defendant is imposing an administrative requirement on an out-of-network provider and its patients that is more restrictive, limiting, and burdensome than that imposed on network providers.

64.     By reason of the foregoing, Defendant has violated Affordable Care Act, 42 U.S.C. § 300gg-19a(b)(1)(ii)(I).

65.     By reason of the foregoing, Defendant has violated the Affordable Care Act's implementing regulations, 26 C.F.R. § 54.9815-2719A(b)(2)(iii); *see also* 29 C.F.R. § 2590.715-2719A(b)(2)(iii); 45 C.F.R. § 147.138(b)(2)(iii).

66.     Defendant's actions have, and will continue to, irreparably harm Harford HealthCare and its patients by imposing significant and repeated administrative burdens and restrictions on them.

67.     By reason of the foregoing, Hartford HealthCare has no adequate remedy at law.

68.     For all the reasons set forth above, Hartford HealthCare is entitled to a permanent injunction requiring that Defendant directly pay Hartford HealthCare for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries, and such other and further relief that the Court deems just, proper, and equitable..

14

4620756v.4

## THIRD CLAIM FOR RELIEF

69.     Hartford HealthCare repeats and re-alleges the allegations set forth above as if more fully set forth herein.

70.     Under Connecticut General Statutes § 38a-477aa(b)(3)(A), if "emergency services [are] rendered to an insured by an out-of-network health care provider, such health care provider may bill the health carrier directly and the health carrier **shall** reimburse such health care provider. . . ." (emphasis added).  The statute defines health care provider as "an individual licensed to provide health care services. . ." *Id.* § 38a-477aa(a)(4).

71.     Defendant has unequivocally announced that, starting October 1, 2017, it will no longer pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries.

72.     Since, in three of Hartford HealthCare's hospitals – Hartford Hospital, the Hospital of Central Connecticut, and Backus Hospital – Hartford HealthCare bills include charges for emergency medical physician services as a part of a bundled rate, Defendant, by failing to directly pay those hospitals for the emergency medical services rendered to its members and beneficiaries, has violated Connecticut General Statutes § 38a-477aa(b)(3)(A).

73.     Additionally, because patients routinely assign to Hartford HealthCare all rights they have as beneficiaries of Defendant's health plans, which includes payment rights, these assignments further obligate Defendant to reimburse Hartford HealthCare directly for covered health services it provides to these patients.

74.     For all the reasons set forth above, Hartford HealthCare is entitled to a declaration that Defendant's actions, as of October 1, 2017, in refusing to pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to

15

Defendant's members and beneficiaries violates Connecticut General Statutes § 38a-477aa(b)(3)(A), and such other and further relief that the Court deems just, proper, and equitable.

### FOURTH CLAIM FOR RELIEF

75.     Hartford HealthCare repeats and re-alleges the allegations set forth above as if more fully set forth herein.

76.     Under Connecticut General Statutes § 38a-477aa(b)(3)(A), if "emergency services [are] rendered to an insured by an out-of-network health care provider, such health care provider may bill the health carrier directly and the health carrier **shall** reimburse such health care provider. . . ." (emphasis added).  The statute defines health care provider as "an individual licensed to provide health care services. . ." *Id.* § 38a-477aa(a)(4).

77.     Defendant has unequivocally announced that, starting October 1, 2017, it will no longer pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries.

78.     Since, in three of Hartford HealthCare's hospitals – Hartford Hospital, the Hospital of Central Connecticut, and Backus Hospital – Hartford HealthCare bills include charges for emergency medical physician services as a part of a bundled rate, Defendant, by failing to directly pay those hospitals for the emergency medical services rendered to its members and beneficiaries, has violated Connecticut General Statutes § 38a-477aa(b)(3)(A).

79.     Additionally, because patients routinely assign to Hartford HealthCare all rights they have as beneficiaries of Defendant's health plans, these assignments further obligate Defendant to reimburse Hartford HealthCare directly for covered health services it provides to these patients.

80.     By reason of the foregoing, Harford HealthCare has been irreparably harmed and has no adequate remedy at law.

16

81.     For all the reasons set forth above, Hartford HealthCare is entitled to a permanent injunction requiring that, as of October 1, 2017, Defendant must pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries, and such other and further relief that the Court deems just, proper, and equitable.

**WHEREFORE**, Plaintiffs, Hartford HealthCare Corporation; Hartford Hospital; The Hospital of Central Connecticut at New Britain General and Bradley Memorial; MidState Medical Center; The William W. Backus Hospital; and Windham Community Memorial Hospital, Inc., demand judgment as follows:

a)     On the First Claim for Relief, entering a declaration that Defendant's actions, as of October 1, 2017, in refusing to pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries – and imposing an administrative requirement on an out-of-network provider and its patients that is more restrictive, limiting, and burdensome than that imposed on network providers – violate the Affordable Care Act and its implementing regulations.

b)     On the Second Claim for Relief, awarding a permanent injunction requiring that Defendant directly pay Hartford HealthCare for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries.

c)     On the Third Claim for Relief, entering a declaration that Defendant's actions, as of October 1, 2017, in refusing to pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries violates Connecticut General Statutes § 38a-477aa(b)(3)(A).

d)     On the Fourth Claim for Relief, awarding a permanent injunction requiring that, as of October 1, 2017, Defendant must pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries.

e)     Awarding its costs and reasonable attorneys fees in bringing this action.

4620756v.4

f)     Awarding such other and further relief as the Court may deem equitable, just and proper.

Dated: Stamford, Connecticut
       October 5, 2017

GARFUNKEL WILD, P.C.
*Attorneys for Plaintiffs*


By:    */s/ Roy W. Breitenbach*
                Roy W. Breitenbach
       350 Bedford Street
       Stamford, Connecticut 06901
       (203) 316-0483
       (203) 316-0493
       rbreitenbach@garfunkelwild.com

18