UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| HARTFORD HEALTHCARE CORPORATION; HARTFORD HOSPITAL; THE HOSPITAL OF CENTRAL CONNECTICUT AT NEW BRITAIN GENERAL AND BRADLEY MEMORIAL; MIDSTATE MEDICAL CENTER; THE WILLIAM W. BACKUS HOSPITAL; WINDHAM COMMUNITY MEMORIAL HOSPITAL, INC.; and CARLOS DAVID GONZALEZ, | : : : : : : : : : | CIVIL ACTION NO. 17 Civ. 1686  Hon. Janet C. Hall |
| Plaintiffs, | : : |  |
| -against- | : : : |  |
| ANTHEM HEALTH PLANS, INC., d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD, | : : : |  |
| Defendant. | : : : : : : |  |

## PLAINTIFFS' TRIAL MEMORANDUM

GARFUNKEL WILD, P.C.
*Attorneys for Plaintiffs*
350 Bedford Street, Suite 406A
Stamford, Connecticut 06901
(203) 316-0483

Of Counsel:
Roy W. Breitenbach, Esq.

**TABLE OF CONTENTS**

<b>Page</b>

INTRODUCTION ............................................................................................. 1

SUMMARY OF ANTICIPATED TRIAL EVIDENCE ................................................ 4

    **A.**    Hartford HealthCare Corporation ................................................ 4

    **B.**    Defendant's Health Coverage ...................................................... 5

    **C.**    Hartford HealthCare Ceases to Be
         One of Defendant's Network Providers ........................................ 5

    **D.**    Defendant's Refusal to Honor
         Its Direct Payment Obligations ................................................... 6

    **E.**    Defendant's Refusal to Directly Pay Hartford HealthCare
         Imposes Significant Administrative Burdens and Irreparable Harm ...... 8

    **F.**    Hartford HealthCare's Patients, Including Carlos
         David Gonzalez, Face Significant Administrative Burdens and Irreparable
         Harm ..................................................................................... 11

    **G.**    Procedural History ................................................................... 12

ARGUMENT .................................................................................................. 13

POINT I

HARTFORD HEALTHCARE IS ENTITLED TO ENFORCE ITS RIGHTS
TO PLAN BENEFITS, TO CLARIFY ITS RIGHTS TO FUTURE
BENEFITS, AND TO SEEK INJUNCTIVE RELIEF UNDER ERISA § 502(A) ........ 13

**A.**    ERISA Provides Private Rights of Action to
      Challenge Defendant's Violation of the
      Affordable Care Act and Its Implementing Regulations ................... 13

**B.**    Plaintiffs Have Standing Under ERISA § 502(a) ........................... 14

**C.**    Plaintiffs Have Exhausted Their Administrative
      Remedies, or, in the Alternative, Will Demonstrate Futility ............ 15

POINT II

HARTFORD HEALTHCARE IS ENTITLED TO CHALLENGE
DEFENDANT'S INDIRECT PAYMENT SCHEME UNDER
STATE LAW EXPRESS AND IMPLIED-IN-FACT CONTRACT THEORIES ........... 16

4641848v.2

**TABLE OF CONTENTS**
(continued)

**Page**

A.    Plaintiffs Will Establish
Defendant's Breach of Express Contract ........................................................................ 17

B.    Plaintiffs Will Establish Defendant's
Breach of Implied-in-Fact Contract .............................................................................. 18

POINT III

A PRIVATE RIGHT OF ACTION IS IMPLIED UNDER THE PROVISIONS OF THE
AFFORDABLE CARE ACT AND CONNECTICUT LAW AT ISSUE IN THIS
ACTION ............................................................................................................................ 19

A.    The Patient Protection Provisions in the
Affordable Care Act Imply a Private Right of Action ................................................... 19

B.    A Private Right Of Action Is Also Implied Under
Connecticut General Statutes § 38A-477aa(b)(3)(A) .................................................... 21

POINT IV

PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF ........................................ 23

A.    Plaintiffs Have Meritorious
Claims under Federal and State Law .............................................................................. 24

B.    Plaintiffs Have Suffered, and
Will Suffer, Irreparable Injury, Which
Cannot Be Adequately Redressed by Money Damages ................................................ 26

C.    The Balancing of the Equities Tips
In Favor of Injunctive Relief for Plaintiffs ................................................................... 28

D.    Injunctive Relief Would Serve the Public Interest ........................................................ 29

POINT V

PLAINTIFFS ARE ENTITLED TO DECLARATORY RELIEF .................................. 30

CONCLUSION ................................................................................................................. 33

4641848v.2

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Am. Psychiatric Assoc. v. Anthem Health Plans,*
    50 F. Supp. 3d 157 (D. Conn. 2014), *aff'd sub nom. Am. Psychiatric Ass'n v.*
    *Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016) ........................................ 15

*Arrowood Indem. Co. v. King,*
    699 F.3d 735 (2d Cir. 2012) .................................................................................... 16

*Barron v. Vision Serv. Plan,*
    575 F. Supp. 2d 825 (N.D. Ohio 2008) ............................................................ 27, 29

*Cort v. Ash,*
    422 U.S. 66 (1975) ........................................................................................... 20, 21

*Dow Jones & Co. v. Harrods Ltd.,*
    346 F.3d 357 (2d Cir. 2003) .................................................................................... 32

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) ................................................................................................ 23

*Fairfield County Med. Ass'n v. United Healthcare of New England,*
    985 F. Supp. 2d 262 (D. Conn. 2013), *aff'd as modified sub nom. Fairfield*
    *County Med. Ass'n v. United Healthcare of New England, Inc.*, 557 F. App'x
    53 (2d Cir. 2014) ............................................................................................. 27, 29

*I.V. Servs. of Am., Inc. v. Trustees of Am. Consulting Engineers Council Ins. Tr.*
    *Fund,*
    136 F.3d 114 (2d Cir. 1998) .................................................................................... 15

*Kennedy v. Empire Blue Cross & Blue Shield,*
    989 F. Supp. 588 (2d Cir. 1993) ...................................................................... 15, 16

*Main St. Baseball, LLC v. Binghamton Mets Baseball Club, Inc.,*
    103 F. Supp. 3d 244 (N.D.N.Y. 2015) .................................................................... 29

*Massachusetts Mut. Life Ins. Co. v. Russell,*
    473 U.S. 134 (1985) ................................................................................................ 13

*New York Pathological & X–Ray Laboratories v. Immigration and Naturalization*
    *Service,*
    523 F.2d 79 (2d Cir. 1975) ............................................................................... 26, 29

*New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.,*
    980 F. Supp. 2d 527 (S.D.N.Y. 2013), *aff'd in part, vacated in part on other*
    *grounds,* 798 F.3d 125 (2d Cir. 2015) ................................................................... 14

iii

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*New York Times Co. v. Gonzales,*
   459 F.3d 160 (2d Cir. 2006) ........................................................................ 31

*Simon v. Gen. Elec. Co.,*
   263 F.3d 176 (2d Cir. 2001) ........................................................................ 15

*Touche Ross & Co. v. Redington,*
   442 U.S. 560 (1979) .................................................................................... 20

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,*
   444 U.S. 11 (1979) ................................................................................ 19, 20

*U.S. S.E.C. v. Citigroup Glob. Markets, Inc.,*
   752 F.3d 285 (2d Cir. 2014) ........................................................................ 23

**State Cases**

*Galvan v. Metro. Prop. & Cas. Ins. Co.,*
   2012 WL 4378043 (Conn. Super. Ct. Aug. 31, 2012) .................................. 17

*Janusauskas v. Fichman,*
   264 Conn. 796, 826 A.2d 1066 (2003) ........................................................ 18

*Keller v. Beckenstein,*
   117 Conn. App. 550, 979 A.2d 1055 (2009) ............................................... 17

*Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.,*
   311 Conn. 29, 84 A.3d 1167 (2014) ........................................................... 16

*Napoletano v. CIGNA Healthcare of Connecticut, Inc.,*
   238 Conn. 216, 680 A.2d 127 (1996), *overruled on other grounds by Batte-*
   *Holmgren v. Comm'r of Pub. Health*, 281 Conn. 277, 914 A.2d 996 (2007) .......... 22

*Rumbin v. Utica Mut. Ins. Co.,*
   254 Conn. 259, 757 A.2d 526 (2000) .......................................................... 15

*Schietinger v. S. New England Tel. Co.,*
   2006 WL 2677825 (Conn. Super. Ct. Aug. 13, 2006) .................................. 17

*Vitti v. Allstate Ins. Co.,*
   245 Conn. 169, 713 A.2d 1269 (1998) ........................................................ 16

**Federal Statutes**

29 U.S.C. § 1002 ........................................................................................ 13

29 U.S.C. § 1185d (a)(1) ............................................................................ 13

iv

## TABLE OF AUTHORITIES
(continued)

Page(s)

42 U.S.C. § 300gg-19a ............................................................................................. 13, 19, 20

42 U.S.C. § 300gg-19a(b)(1) .......................................................................................... 14

42 U.S.C. § 300gg-19a(b)(1)(ii)(I) ............................................................................. *passim*

42 U.S.C. § 300gg-91 ..................................................................................................... 14

Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ........................... 5

ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1) ............................................................... 12, 13

ERISA § 502(a)(1) and (3) ............................................................................................ 15

ERISA § 502(a)(1)(B) ............................................................................................... 13, 14

ERISA § 502(a)(3) ................................................................................................ 12, 13, 14

**State Statutes**

Connecticut General Statutes § 38a–323 ....................................................................... 16

Connecticut General Statutes § 38a-477aa(b)(3)(A) ................................................... *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(1) and (6) ........................................................... 12

**Regulations**

26 C.F.R. § 54.9815-2719A(b)(2)(iii) ........................................................... 8, 17, 24, 31

29 C.F.R. § 2590.715-2719A(b)(2)(iii) ................................................................... 8, 24

45 C.F.R. § 147.138(b)(2)(iii) ................................................................................ 8, 24

80 Fed. Reg. 72,192, 72,213 (Nov. 18, 2015) ............................................................. 30

4641848v.2

**INTRODUCTION**

In this action, Plaintiffs, which include Hartford HealthCare Corporation; Hartford Hospital; The Hospital of Central Connecticut at New Britain General and Bradley Memorial; MidState Medical Center; The William W. Backus Hospital; and Windham Community Memorial Hospital, Inc. (collectively, "Hartford HealthCare") and  Carlos David Gonzalez, an individual who has received emergency medical services from Hartford HealthCare in the past, and expects to receive them in the future, seek declaratory and injunctive relief mandating that Defendant, Anthem Health Plans, Inc., d/b/a Anthem Blue Cross and Blue Shield, directly reimburse Hartford HealthCare for the emergency health care services performed for members of Defendant's health plans.

Although the Patient Protection and Affordable Care Act prohibits insurers and health plans from imposing greater administrative restrictions on claims for out-of-network emergency services than they do on claims for in-network emergency services, and Connecticut law specifically requires that out-of-network physicians be reimbursed directly for their emergency services, beginning October 1, 2017, Defendant is no longer providing reimbursement directly to Hartford HealthCare – as it has done for many years – for the emergency services provided to its members and beneficiaries.  Instead, Defendant is reimbursing its members and beneficiaries for health care services that Hartford HealthCare provided to them.

Defendant's indirect payment scheme – which has no legitimate justification and is thus simply retaliation for Hartford HealthCare's rejection of unfairly low in-network rates that Defendant has proposed for Hartford HealthCare's services – is causing, and will continue to cause, Hartford HealthCare's patients and the health system itself irreparable harm.

As will be established at trial, Defendant's indirect payment scheme is placing one more burden on individuals and families who have suffered the tragedy of an emergency medical

1

condition.   Before October 1, Defendant's reimbursement for emergency medical care was relatively straightforward: Hartford HealthCare provided the services and issued its bill to Defendant.   Defendant then adjudicated the claim, and paid Hartford HealthCare directly at the rates and time frames set forth in the parties' agreement.   Hartford HealthCare received the reimbursement promptly, along with an explanation of how Defendant adjudicated the claim, so that Hartford HealthCare could expeditiously appeal and assert its rights.   If there were problems or delays, Hartford HealthCare had the ability to contact Defendant directly with status inquiries. Removed from this entire process were patients and their families, who were thereby able to focus on their health.

Since October 1, however, the process has become dramatically more complicated.   Now, after Hartford HealthCare issues its bill, it is kept completely in the dark about the process.   It has no idea when or how Defendant adjudicates the claim, and it has no idea when Defendant is sending its "reimbursement" check to the patient, and how much is being reimbursed.   Thus, Hartford HealthCare is put in the unfortunate position of having to follow up on all of these issues with its sick patients (and their families).

These sick patients are put in the middle of the entire reimbursement process.   They must field the follow-up inquiries from Hartford HealthCare.   They will receive a substantial check, made payable to them, along with confusing and complex explanation of benefits forms.   They will be forced to decipher these forms, deposit Defendant's check, and make arrangements to pay Hartford HealthCare.   They will also have to determine whether Defendant's reimbursement amount is correct, and, if it is not, exercise their appeal rights.   Hartford HealthCare has patient account personnel with years of experience handling these complex issues; Defendant is now transferring the burden to sick patients.

Since at least 1986, when Congress passed the Emergency Medical Treatment and Active Labor Act, it has been the policy in the United States that the treatment of emergency medical conditions by hospital personnel should be kept as separate as possible from financial reimbursement issues. Among other reasons, this is because of a concern that, if financial reimbursement issues are intertwined with treatment, patients may delay or forego medically necessary care.

This irreparably harms not only patients, but hospitals too. Hospital staff depends on the separation between treatment and financial issues to maintain positive relationships with patients that are focused on clinical issues and enabling patients to get well. By unnecessarily putting patients into the middle of reimbursement issues, Defendant is breaching this wall of separation and irreparably harming Hartford HealthCare's ability to maintain positive relationships with their patients.

Defendant's indirect payment scheme also imposes substantial administrative burdens on Hartford HealthCare, which will be forced to divert substantial resources – resources that can, and should, be used to maintain and improve the health and welfare of its patients and the communities in which it provides services – to unnecessary tracking of reimbursement payments, assuaging confused patients' concerns, educating patients about appeal rights, and making arrangements with sick patients to provide payments. This diversion of resources away from Hartford HealthCare's mission is substantial and irreparable.

Defendant's actions also needlessly put significant sums of money into the hands of patients who, because of behavioral health, addictive behavior, or substance abuse issues, are likely to misuse the money to place themselves or other in danger. Elderly patients – many of them homebound – will also be endangered by being forced to make needless visits to financial

and other institutions to cash reimbursement checks, decipher complex explanation of benefit forms, and pay Hartford HealthCare.

For these reasons, and based upon the evidence that will be adduced at trial, the Court should issue a permanent injunction mandating that Defendant provide reimbursement directly to Hartford HealthCare for the out-of-network emergency services provided to Defendant's members and beneficiaries.   The Court should further enter a judgment declaring that Defendant's actions, as of October 1, 2017, in refusing to pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries – and imposing an administrative requirement on an out-of-network provider and its patients that is more restrictive, limiting, and burdensome than that imposed on network providers – violates the Affordable Care Act and its implementing regulations, and Connecticut law.

## SUMMARY OF ANTICIPATED TRIAL EVIDENCE

### A.     Hartford HealthCare Corporation

Hartford HealthCare is a fully integrated health system that includes a tertiary-care teaching hospital, an acute-care community teaching hospital, an acute-care hospital and trauma center, two community hospitals, a behavioral health network, a multispecialty physician group, and related ancillary services.

Specifically, Hartford HealthCare includes Hartford Hospital, a 163-year old institution that is the major teaching institution affiliated with the University of Connecticut Medical School; Backus Hospital in Norwich; the Hospital of Central Connecticut in New Britain; MidState Medical Center in Meriden; and Windham Hospital.   All of these hospitals provide medically necessary emergency medical services to the residents of their communities. Some, like Hartford Hospital, are New England regional centers for emergency medical care.

4

In three of these hospitals – Hartford Hospital, the Hospital of Central Connecticut, and Backus Hospital – Hartford HealthCare bills include charges for emergency medical physician services as a part of a bundled rate negotiated by Defendant.

**B.**     **Defendant's Health Coverage**

Defendant, Anthem Health Plan, Inc., is Connecticut's largest commercial health insurer, providing coverage to more than one million residents – including most state employees.   For some of its health plans, Defendant serves as a traditional individual or group health insurer.   For other of its health plans, Defendant serves as claims administrator for self-insured employee benefit plans established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*

Defendant's members and beneficiaries receive their health care services through two categories of providers: network and out-of-network providers.   Network providers become part of Defendant's networks by entering into participating provider agreements with Defendant. These provider agreements specify, among other things, the mutually agreeable rates at which the provider is to be reimbursed for health care services provided to Defendant's members and beneficiaries.   Out-of-network providers do not enter into participating provider agreements with Defendant.   They are not members of any of Defendant's networks.

**C.**     **Hartford HealthCare Ceases to Be**
            **One of Defendant's Network Providers**

For many years until September 30, 2017, Hartford HealthCare was one of Defendant's network providers.   Defendant reimbursed Hartford HealthCare for the care that Hartford HealthCare provided to Defendant's members and beneficiaries at the rates set in the parties' participating provider agreement.   The most recent participating provider agreement between Defendant and Hartford HealthCare expired on September 30, 2017.   Because of Defendant's

4641848v.2

steadfast refusal to renew the participating provider agreement unless and until Hartford HealthCare agrees to unfairly – and catastrophically – low reimbursement rates, Hartford HealthCare was reluctantly forced to become an out-of-network provider for Defendant effective October 1, 2017.

Although Defendant no longer has a participating provider agreement with Hartford HealthCare, Defendant nevertheless is obligated to provide reimbursement directly to Hartford HealthCare for emergency medical care rendered by Hartford HealthCare to Defendant's members and beneficiaries under federal and state law.  Additionally, because patients routinely assign to Hartford HealthCare all rights they have as beneficiaries of Defendant's health plans in exchange for health care services, these assignments further obligate Defendant to reimburse Hartford HealthCare for covered health services it provides to these patients.

**D.    Defendant's Refusal to Honor
        <u>Its Direct Payment Obligations</u>**

For decades prior to October 1, 2017, Defendant directly paid Hartford HealthCare for health care services that Hartford HealthCare provided to Defendant's members and beneficiaries.  Unfortunately, Defendant announced that, starting October 1, 2017, it will not directly pay Hartford HealthCare for health care services that Hartford HealthCare provides to Defendant's members and beneficiaries.

Instead, Defendant, starting October 1, 2017, is paying its members and beneficiaries for health care services that Hartford HealthCare provided to them.  It will then be the responsibility of the members and beneficiaries to deposit these funds and make separate arrangements to pay Hartford HealthCare.  Defendant has made it clear that it will play no role in the payment to Hartford HealthCare.  Defendant also will not provide any information to Hartford HealthCare about payment status or related issues.

4641848v.2

Defendant has provided no legitimate justification for this dramatic change in its decades-old direct payment procedure.  Rather, it is clear from the timing of this change – and the statements made by Defendant to Hartford HealthCare – that this change is simply and blatantly in retaliation for Hartford HealthCare's refusal to agree to Defendant's unfairly low proposed reimbursement rates.

Defendant is stubbornly holding to this newly adopted procedure even after Hartford HealthCare pointed out to it that the federal Affordable Care Act, and its implementing regulations, require that Defendant directly pay Hartford HealthCare for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries.

Specifically, the Affordable Care Act, 42 U.S.C. § 300gg-19a(b)(1)(ii)(I), provides that, if a health plan provides coverage for medically necessary emergency medical services rendered by network providers – as Defendant's health plans do – then it must provide similar coverage for medically necessary emergency medical services rendered by out-of-network providers.  This is for the benefit of patients so that they are not forced to choose an in network provider in an emergency crisis.

And, in covering medically necessary emergency medical services rendered by out-of-network providers, the health plan cannot impose any more restrictions or limitations on that coverage than apply to medically necessary emergency medical services rendered by network providers.  42 U.S.C. § 300gg-19a(b)(1)(ii)(I).  Likewise, the regulations implementing the Affordable Care Act provide that, in covering medically necessary emergency medical services rendered by out-of-network providers, the health plan cannot impose "any administrative requirement or limitation on coverage that is more restrictive than the requirements or limitations

that apply to emergency services received from in-network providers." 26 C.F.R. § 54.9815-2719A(b)(2)(iii); *see also* 29 C.F.R. § 2590.715-2719A(b)(2)(iii); 45 C.F.R. § 147.138(b)(2)(iii).

Additionally, Connecticut General Statutes § 38a-477aa(b)(3)(A) provides that, if "emergency services [are] rendered to an insured by an out-of-network health care provider, such health care provider may bill the health carrier directly and the health carrier **shall** reimburse such health care provider." (Emphasis added). The statute defines health care provider as "an individual licensed to provide health care services." *Id.* § 38a-477aa(a)(4).

Finally, because patients routinely assign to Hartford HealthCare all rights they have as beneficiaries of Defendant's health plans – which includes payment rights – these assignments further obligate Defendant to reimburse Hartford HealthCare directly for covered health services it provides to these patients.

**E.      Defendant's Refusal to Directly Pay Hartford HealthCare**
**Imposes Significant Administrative Burdens and Irreparable Harm**

By wrongly refusing to directly pay Hartford HealthCare for emergency medical services it provides to Defendant's members or beneficiaries – and instead only paying Defendant's members or beneficiaries – Defendant is imposing an administrative requirement on out-of-network providers and their patients that is more restrictive, limiting, and burdensome than that imposed on network providers, whom Defendant will directly pay.

Specifically, under Defendant's new indirect payment scheme, Defendant will send "reimbursement" checks, along with explanations of benefits and other paperwork, to patients who have just recently received emergency medical services.  Before October 1, Defendant's reimbursement for emergency medical care was relatively straightforward: Hartford HealthCare provided the services and issued its bill to Defendant. Defendant then adjudicated the claim, and paid Hartford HealthCare directly at the rates and time frames set forth in the parties' agreement.

8

Hartford HealthCare received the reimbursement promptly, along with an explanation of how Defendant adjudicated the claim, so that Hartford HealthCare could expeditiously appeal and assert its rights.  If there were problems or delays, Hartford HealthCare had the ability to contact Defendant directly with status inquiries.  Removed from this entire process were patients and their families, who were thereby able to focus on their health.

Since October 1, however, the process has become dramatically more complicated.  Now, after Hartford HealthCare issues its bill, it is kept completely in the dark about the process.  It has no idea when or how Defendant adjudicates the claim, and it has no idea when Defendant is sending its "reimbursement" check to the patient, and how much is being reimbursed.  Thus, Hartford HealthCare is put in the unfortunate position of having to follow up on all of these issues with its sick patients (and their families).

These sick patients are put in the middle of the entire reimbursement process.  They must field the follow-up inquiries from Hartford HealthCare.  They will receive a substantial check, made payable to them, along with confusing and complex explanation of benefits forms.  They will be forced to decipher these forms, deposit Defendant's check, and make arrangements to pay Hartford HealthCare.  They will also have to determine whether Defendant's reimbursement amount is correct, and, if it is not, exercise their appeal rights.  Hartford HealthCare has patient account personnel with years of experience handling these complex issues; Defendant is now transferring the burden to sick patients.

Since at least 1986, when Congress passed the Emergency Medical Treatment and Active Labor Act, it has been the policy in the United States that the treatment of emergency medical conditions by hospital personnel should be kept as separate as possible from financial reimbursement issues.  Among other reasons, this is because of a concern that, if financial

9

reimbursement issues are intertwined with treatment, patients may delay or forego medically necessary care.

This irreparably harms not only patients, but hospitals too.  Hospital staff depends on the separation between treatment and financial issues to maintain positive relationships with patients that are focused on clinical issues and enabling patients to get well.  By unnecessarily putting patients into the middle of reimbursement issues, Defendant is breaching this wall of separation and irreparably harming Hartford HealthCare's ability to maintain positive relationships with their patients.

Defendant's indirect payment scheme also imposes substantial administrative burdens on Hartford HealthCare, which will be forced to divert substantial resources – resources that can, and should, be used to maintain and improve the health and welfare of its patients and the communities in which it provides services – to unnecessary tracking of reimbursement payments, assuaging confused patients' concerns, educating patients about appeal rights, and making arrangements with sick patients to provide payments.  This diversion of resources away from Hartford HealthCare's mission is substantial and irreparable.

Defendant's actions also needlessly put significant sums of money into the hands of patients who, because of behavioral health, addictive behavior, or substance abuse issues, are likely to misuse the money to place themselves or other in danger.  Elderly patients – many of them homebound – will also be endangered by being forced to make needless visits to financial and other institutions to cash reimbursement checks, decipher complex explanation of benefit forms, and pay Hartford HealthCare.

**F.    Hartford HealthCare's Patients, Including Carlos**
<u>**David Gonzalez, Face Significant Administrative Burdens and Irreparable Harm**</u>

Plaintiff Carlos David Gonzalez is a member of a health plan which he receives through his employment at Aspen Square Management.  Upon information and belief, Mr. Gonzalez's health plan is governed by ERISA.  Defendant serves as the plan's claims administrator within the State of Connecticut, and in such capacity has discretion to adjudicate and pay employee health benefits thereunder.

Mr. Gonzalez has received emergency medical services at Hartford Hospital in the past, as have members of his immediate family.  Given the proximity of his home to Hartford Hospital, and the status of his health, as well as the health of his family, Mr. Gonzalez reasonably anticipates being forced to seek emergency medical treatment from Hartford HealthCare (either for himself or his immediate family) in the near future.

As such, under Defendant's indirect payment scheme – which went into effect as of October 1, 2017 – Mr. Gonzalez will be forced to collect a check for "reimbursement" from Defendant, and make arrangements with Hartford HealthCare to provide payment himself.  Mr. Gonzalez will also be tasked with following up with Defendant regarding any delayed or missing payments and prosecuting any appeals under his health plan.

Accordingly, Mr. Gonzalez stands to suffer significant administrative burdens and irreparable harm.  Indeed, as a result of the significant administrative burden that would be placed upon him, Mr. Gonzalez may choose to delay his or his family's emergency medical care, seek care at hospitals farther away from his home than Hartford HealthCare's facilities, or seek care from an outpatient urgent care center when hospital care is medically necessary.

Likewise, other Hartford HealthCare patients will suffer significant administrative burdens and irreparable harm as a result of Defendant's indirect payment scheme.  At trial,

11

Plaintiffs will offer the testimony of additional patients regarding such burdens and the effect that it will have on their patient-provider relationship with Hartford HealthCare.

## G.   Procedural History

Hartford HealthCare initiated this lawsuit on October 5, 2017. In its initial Complaint, Hartford HealthCare sought a judgment declaring that Defendant's actions, as of October 1, 2017, in refusing to pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries violates both the Affordable Care Act and Connecticut law. *See* Compl. (Doc. No. 1), ¶¶ 58 & 74. Hartford HealthCare also sought a permanent injunction requiring that Defendant directly pay Hartford HealthCare for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries. *See id.*, ¶¶ 68 & 81.

Plaintiffs filed an Amended Complaint as of right on October 19, 2017.[1] In the Amended Complaint, Carlos David Gonzalez was joined as a plaintiff. *See* Am. Compl. (Doc. No. 42). Plaintiffs also added additional causes of action under ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1), seeking to enforce its right to benefits and to clarify its right to future benefits, and under ERISA § 502(a)(3), seeking to enjoin Defendant's violation of the Affordable Care Act, as incorporated into ERISA. *See* Am. Compl., ¶¶ 87-132. Furthermore, Hartford HealthCare added causes of action for breach of contract and breach of implied-in-fact contract under Connecticut law. *See id.*, ¶¶ 124-49.

---

[1]   On October 16, 2017, Defendant filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). Defendant argue, *inter alia*, that Plaintiffs do not have a private right of action for the relief they seek, that Hartford HealthCare lacks a basis to seek declaratory or injunctive relief, and that Plaintiffs have not adequately alleged irreparable harm. For the reasons set forth in this Memorandum, Plaintiffs have met their burden – both at the pleading stage and on the merits – to demonstrate that they are entitled to the relief they seek in this lawsuit. Pursuant to the Court's October 18, 2017 Order, Plaintiffs will also submit a formal opposition to Defendant's motion on or before October 27, 2017 at noon.

## ARGUMENT

## POINT I

**HARTFORD HEALTHCARE IS ENTITLED TO ENFORCE ITS RIGHTS TO PLAN BENEFITS, TO CLARIFY ITS RIGHTS TO FUTURE BENEFITS, AND TO SEEK INJUNCTIVE RELIEF UNDER ERISA § 502(A)**

A.    **ERISA Provides Private Rights of Action to Challenge Defendant's Violation of the Affordable Care Act and Its Implementing Regulations**

Plaintiffs are permitted to challenge Defendant's indirect payment scheme pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a).  The statute "provides a wide array of measures to employee-benefit plan participants and beneficiaries by which they may enforce their rights under ERISA and under the terms of their plans." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985).  Specifically, Section 502(a)(1)(B) permits a plan participant[2] or beneficiary to bring a civil action to recover plan benefits, enforce his or her rights under the terms of the plan, or clarify the right to future plan benefits.  29 U.S.C. § 1132(a)(1). Furthermore, under Section 502(a)(3), a plan participant or beneficiary may seek to "enjoin any act or practice which violates any provision" of ERISA or the terms of the plan, or "to obtain other appropriate equitable relief" to "redress such violations or . . . enforce any provisions" of ERISA.

Congress has expressly incorporated certain provisions of the Affordable Care Act into ERISA, including 42 U.S.C. § 300gg-19a.  *See* 29 U.S.C. § 1185d (a)(1) ("[T]he provisions of part A of title XXVII of the Public Health Service Act [42 U.S.C. 300gg *et seq.*] (as amended by

---

[2]    For the purposes of ERISA, a "participant" is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002.

the Patient Protection and Affordable Care Act) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart"); *see New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 980 F. Supp. 2d 527, 544 (S.D.N.Y. 2013), *aff'd in part, vacated in part on other grounds*, 798 F.3d 125 (2d Cir. 2015). Indeed, 42 U.S.C. § 300gg-19a(b)(1) specifies that it applies to both a "group health plan" and a "health insurance issuer offering group or individual health insurance coverage." The Affordable Care Act defines a "group health plan" as "an employee welfare benefit plan" as defined under ERISA "to the extent that the plan provides medical care . . . to employees or their dependents." 42 U.S.C. § 300gg-91.

As Plaintiffs will establish at trial, several of Defendant's health plans are self-insured employee benefit plans governed by ERISA. Accordingly, any member of beneficiary of an ERISA plan offered by Defendant is entitled to bring an action under ERISA § 502(a)(1)(B) to enforce Defendant's compliance with the Affordable Care Act and its implementing regulations, and to clarify his or her right to future relief thereunder. Under ERISA § 502(a)(3), the members and beneficiaries of Defendant's ERISA plans may likewise sue for injunctive or other equitable relief based upon Defendant's violation of the Affordable Care Act, as incorporated into ERISA.

**B.   Plaintiffs Have Standing Under ERISA § 502(a)**

As a member of, and participant in, an ERISA plan in which Defendant serves as claims administrator, Carlos David Gonzalez will establish his standing to assert causes of action under both ERISA § 502(a)(1)(B) to enforce his right to benefits and clarify his right to future benefits and § 502(a)(3) to seek injunctive or other equitable relief.

Hartford HealthCare likewise will demonstrate that it has standing under ERISA for the relief it seeks in this lawsuit. Although ERISA § 502(a) bestows a private right of action upon plan participants and beneficiaries, the Second Circuit, in accordance with its sister courts, has

14

carved a "narrow exception" that "grants standing . . . to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001); *see I.V. Servs. of Am., Inc. v. Trustees of Am. Consulting Engineers Council Ins. Tr. Fund*, 136 F.3d 114, 117 (2d Cir. 1998) ("[T]he assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA."). Because Hartford HealthCare's patients routinely assign their benefits in exchange for health care services – including most, if not all, of the emergency services at issue in this lawsuit – Hartford HealthCare clearly has standing to seek declaratory and injunctive relief under ERISA § 502(a)(1) and (3).[3]

## C.    Plaintiffs Have Exhausted Their Administrative Remedies, or, in the Alternative, Will Demonstrate Futility

It is well settled in the Second Circuit that a plaintiff seeking relief under ERISA must either demonstrate the exhaustion of its administrative remedies or make a "'clear and positive showing' that pursuing available administrative remedies would be futile." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993).

Here, the evidence adduced at trial will demonstrate that Plaintiffs exhausted all available administrative remedies. As a threshold matter, because Defendant's indirect payment scheme became effective as of October 1, 2017, Defendant has likely not yet processed many claims that Hartford HealthCare has submitted for reimbursement. Therefore, there is likely no appeal or

---

[3]      Although Defendant has asserted that several of its plans contain anti-assignment clauses and thus do not permit patients to assign their claims under ERISA, Hartford HealthCare has not seen any such plans. We note that under ERISA, anti-assignment language must be unambiguous in order to prohibit the assignment of rights, and any ambiguities are construed against the insurer. *See Am. Psychiatric Assoc. v. Anthem Health Plans*, 50 F. Supp. 3d 157, 163 (D. Conn. 2014)*, aff'd sub nom. Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016); *see also Rumbin v. Utica Mut. Ins. Co.*, 254 Conn. 259, 268, 757 A.2d 526, 531 (2000) (holding that, under Connecticut law, "antiassignment clauses are construed narrowly whenever possible").

4641848v.2

other administrative remedy that Hartford HealthCare, Mr. Gonzalez, or other Hartford HealthCare patients could have pursued prior to bringing this action.  Moreover, Hartford HealthCare has demanded that Defendant provide reimbursement directly to it for the emergency health care services that it renders to members and beneficiaries of Defendant's plans, but Defendant has refused to do so.  Thus, to the extent that Hartford HealthCare was required to do so, it was exhausted its administrative remedies.

In the alternative, because Defendant has unequivocally stated that it will not provide reimbursement directly to Hartford HealthCare for the emergency services rendered to Defendant's members and beneficiaries, Plaintiffs will be able to make a clear and positive showing that the pursuit of any administrative remedies would be futile.  *See Kennedy*, 989 F.2d at 594.

## POINT II

### HARTFORD HEALTHCARE IS ENTITLED TO CHALLENGE DEFENDANT'S INDIRECT PAYMENT SCHEME UNDER STATE LAW EXPRESS AND IMPLIED-IN-FACT CONTRACT THEORIES

To the extent that Defendant's plans are not governed by ERISA, Plaintiffs will demonstrate that they are entitled to declaratory and injunctive relief under their Connecticut law breach of contract and breach of implied-in-fact contract claims.  Under Connecticut law, an "insurance policy is to be interpreted by the same general rules that govern the construction of any written contract." *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 311 Conn. 29, 37, 84 A.3d 1167, 1173 (2014).

In interpreting insurance contracts, courts have considered the underlying statutory or regulatory scheme. *See, e.g., Arrowood Indem. Co. v. King*, 699 F.3d 735, 740 (2d Cir. 2012) (assessing liability insurance policy's compliance with Connecticut General Statutes § 38a–323); *Vitti v. Allstate Ins. Co.*, 245 Conn. 169, 174, 713 A.2d 1269, 1272 (1998) (assessing the validity

16

of automobile insurance plan in light of regulation concerning exclusion for uninsured motorist benefits); *Galvan v. Metro. Prop. & Cas. Ins. Co.*, 2012 WL 4378043, at *2 (Conn. Super. Ct. Aug. 31, 2012) (same).   Because Defendant's health plans must comply with all applicable federal and state statutes and regulations – including 42 U.S.C. § 300gg-19a(b)(1)(ii)(I), 26 C.F.R. § 54.9815-2719A(b)(2)(iii), and Connecticut General Statutes § 38a-477aa(b)(3)(A) – the Court must consider Defendant's compliance with those provisions in a common-law breach of contract or quasi-contract claim.

## A.   Plaintiffs Will Establish Defendant's Breach of Express Contract

Under Connecticut law, the "elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Keller v. Beckenstein*, 117 Conn. App. 550, 558, 979 A.2d 1055, 1060 (2009).

As Plaintiffs will demonstrate at trial, Hartford HealthCare is the assignee of numerous contracts between Defendant and its members and beneficiaries.   Hartford HealthCare routinely receives such assignments in exchange for the provision of health care services – including the emergency services at issue in this action – to its patients.   As assignee, Hartford HealthCare "stands in the shoes" of its patients who are members or beneficiaries of Defendant's plans. *Schietinger v. S. New England Tel. Co.*, 2006 WL 2677825, at *6 (Conn. Super. Ct. Aug. 13, 2006) (quoting *Mall v. LaBow*, 33 Conn. App. 359, 362, 635 A.2d 871 (1993)).

The evidence presented at trial will show that Hartford HealthCare and its patients substantially and materially complied with the insurance contracts with Defendant, and that Defendant breached those contracts by refusing to provide reimbursement to Hartford HealthCare directly for the emergency health care services rendered to its members and beneficiaries, in violation of the Affordable Care Act and its implementing regulations and

17

Connecticut law.  Plaintiffs will also establish that Defendant's refusal to provide reimbursement directly to Hartford HealthCare constitutes a breach of the insurance contracts at issue simply by virtue of the assignments of benefits that Hartford HealthCare has received.

Finally, Plaintiffs will prove that they are damaged, or will soon be damaged, as a result of Defendant's indirect payment scheme.  Hartford HealthCare will face delayed reimbursement for its services, and in some instances will receive no reimbursement due to the inevitability of misplaced, lost, and pocketed checks.  Hartford HealthCare will also be forced to divert substantial resources – resources that can, and should, be used to maintain and improve the health and welfare of its patients and the communities in which it provides services – to unnecessary tracking of reimbursement payments, assuaging confused patients' concerns, educating patients about appeal rights, and making arrangements with sick patients to provide payments.

**B.    Plaintiffs Will Establish Defendant's
       <u>Breach of Implied-in-Fact Contract</u>**

Under Connecticut law, a contract is implied in fact where "a plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor, and the defendant, knowing such circumstances, avails himself of the benefit of those services." *Janusauskas v. Fichman*, 264 Conn. 796, 804-05, 826 A.2d 1066, 1073 (2003).

If the Court were to find that there is no express contract between Hartford HealthCare, as assignee, and Defendant, Plaintiffs will nonetheless be able to demonstrate that Defendant breached, or will soon breach, implied-in-fact contracts with Hartford HealthCare.  When Hartford HealthCare renders emergency health care services to Defendant's members and beneficiaries, it does so with the expectation that it will receive reimbursement from Defendant. Defendant's members and beneficiaries likewise avail themselves of Hartford HealthCare's

18

emergency medical services with the knowledge that Hartford HealthCare will seek reimbursement from Defendant.

As such, implied-in-fact contracts arose, and will continue to arise, between Hartford HealthCare and Defendant. Defendant has breached, or will breach, those implied-in-fact contracts by refusing to provide reimbursement directly to Hartford HealthCare for the emergency medical services rendered to its members and beneficiaries, in violation of the Affordable Care Act and its implementing regulations and Connecticut law.

Therefore, Hartford HealthCare will be able to demonstrate its entitlement to relief under its causes of action for breach of express contract and breach of implied-in-fact contract under Connecticut law.

## POINT III

### A PRIVATE RIGHT OF ACTION IS IMPLIED UNDER THE PROVISIONS OF THE AFFORDABLE CARE ACT AND CONNECTICUT LAW AT ISSUE IN THIS ACTION

Furthermore, based upon the evidence that will be presented at trial the Court should find that Plaintiffs are entitled to declaratory and injunctive relief under private rights of action implied in both 42 U.S.C. § 300gg-19a and Connecticut General Statutes § 38A-477aa(b)(3)(A).

**A.     The Patient Protection Provisions in the
        Affordable Care Act Imply a Private Right of Action**

The question of whether a federal statute contains an implied a private right of action is "basically a matter of statutory construction." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15 (1979). The Supreme Court has enumerated several factors that are relevant to this analysis, including: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether a private right of action is "consistent with the underlying purposes of the legislative scheme"; and (4)

whether "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." *Cort v. Ash*, 422 U.S. 66, 78 (1975). To imply a private right of action, a statute must grant private rights to members of an identifiable class, or prohibit certain conduct as unlawful. *See Transamerica Mortg. Advisors, Inc.*, 444 U.S. at 24; *Touche Ross & Co. v. Redington*, 442 U.S. 560, 569 (1979).

Here, Plaintiffs are able to demonstrate an implied private right of action under 42 U.S.C. § 300gg-19a. As a threshold matter, 42 U.S.C. § 300gg-19a(b)(1)(ii)(I) expressly prohibits insurers or group health plans from imposing any requirements or limitations on coverage for out-of-network emergency services that are more restrictive than those imposed on claims for in-network services. Thus, it both prohibits certain conduct – *i.e.*, placing unfair restrictions or limitations on claims for out-of-network emergency health care services – as unlawful and confers a benefit on both patients and their health care providers.

The factors set forth in *Cort* also strongly suggest that Congress implied a private right of action. First, the statute makes clear that its provisions encompass protections for patients against unfair practices by health insurers and group health plans, specifically including claims for emergency medical services. *See* 42 U.S.C. § 300gg-19a. As a patient who has received emergency health care services from Hartford HealthCare in the past, and who reasonably expects to require Hartford HealthCare's emergency health care services in the future, Carlos David Gonzalez falls squarely within the class of individuals protected by the statute.

Hartford HealthCare is likewise an intended beneficiary of the protections provided by 42 U.S.C. § 300gg-19a(b)(1)(ii)(I). As Plaintiffs will demonstrate at trial, Hartford HealthCare routinely receives assignments of benefits from its patients, and as such stands in the shoes of

Defendant's members and beneficiaries in seeking to enforce their rights concerning payment. Moreover, the rights of Hartford HealthCare and its patients – and the significant administrative burden that they will face under Defendant's indirect payment scheme – are inextricably intertwined.  Because of the administrative burden placed upon patients, Defendant's members and beneficiaries will choose to delay their emergency medical services, or to seek care at facilities that are not owned by Hartford HealthCare.  As a result, Hartford HealthCare will lose patient volume, and thus face a substantial decline in revenue.

Second, Congress has not made any indication that it intended either to grant or deny a private right of action.  *See Cort*, 422 U.S. at 82 ("[I]n situations in which it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to create a private cause of action . . . .").

Third, a private right of action is consistent with the underlying statutory scheme.  A private right of action would strengthen the protections that the Affordable Care Act grants to patients and their providers in connection with claims for out-of-network emergency services.

Fourth, a private right of action under federal law is appropriate here.  Although health insurers are traditionally regulated by the states, Congress enacted sweeping reforms to the health insurance industry by passing the Affordable Care Act, which imposes numerous federal law obligations on insurers.

Therefore, the Court should find that Plaintiffs have a private right of action to seek to enforce Defendant's compliance with the Affordable Care Act and its implementing regulations.

**B.     A Private Right Of Action Is Also Implied Under
        Connecticut General Statutes § 38A-477aa(b)(3)(A)**

Under Connecticut law, courts will look to three factors to determine whether a private statutory cause of action is implied: (1) whether the plaintiff is among the class for whom the

statute was intended to benefit; (2) whether there is any indication in the legislative history that the Legislature intended to grant or deny a private cause of action; and (3) whether an implied private right of action is consistent with the legislative scheme. *Napoletano v. CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 249, 680 A.2d 127, 145 (1996), *overruled on other grounds by Batte-Holmgren v. Comm'r of Pub. Health*, 281 Conn. 277, 914 A.2d 996 (2007).

Here, Plaintiffs meet the test for a private right of action under Connecticut General Statutes § 38A-477aa(b)(3)(A), which explicitly states that an out-of-network health care provider may bill a health insurer carrier directly for emergency services, and that the insurer "shall reimburse such health care provider" directly.

First, the statute benefits out-of-network emergency physicians by permitting them to bill an insurer directly for its services, and mandating that the insurer provide them with reimbursement directly. *See* Connecticut General Statutes § 38A-477aa(b)(3)(A). As Hartford HealthCare bills for emergency physician services at a bundled rate at three of its hospitals, Hartford HealthCare is among the intended beneficiaries of the statute.

To the extent that the statute is meant to benefit patients, Mr. Gonzalez, as a former and likely future recipient of Hartford HealthCare's emergency medical services, is a member of such class. Hartford HealthCare is also a member of such class, as assignee of its patients' rights to benefits, and by virtue of the inextricably intertwined interests between Hartford HealthCare and its patients.

Second, there is no legislative history indicating an intent either to grant or deny a private right of action. *See Napoletano*, 238 Conn. at 250, 680 A.2d at 145 (finding an implied private right of action under the same circumstances).

22

Third, a private right of action is consistent with the statutory scheme. As Connecticut General Statutes § 38A-477aa(b)(3)(A) unequivocally states that an out-of-network physician is entitled to submit bills for emergency services directly to the patient's insurer, and that the insurer must provide reimbursement directly to that physician, it logically follows that a physician would be permitted to bring suit to enforce his rights thereunder.

Accordingly, Plaintiffs have a private right of action to compel Defendant to provide reimbursement directly to it for emergency services under both the Affordable Care Act and Connecticut General Statutes § 38A-477aa(b)(3)(A).

## POINT IV

## PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

As Plaintiffs will establish, at trial, that they are entitled to seek relief in this lawsuit on multiple statutory and common law theories, the Court should grant permanent injunctive relief mandating that Defendant provide reimbursement directly for the emergency health care services that Hartford HealthCare provides to Defendant's members and beneficiaries.

In addition to proving the merits of its claim, a plaintiff seeking a permanent injunction must establish (1) that it has suffered irreparable injury; (2) that monetary damages or any other remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest "would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Second Circuit has found that the same "traditional principles of equity" employed in the *eBay* standard apply "'for injunctions in any context,' be they preliminary or permanent." *U.S. S.E.C. v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 296 (2d Cir. 2014) (quoting *Salinger v. Colting*, 607 F.3d 68, 78 (2d Cir. 2010)).

**A.    Plaintiffs Have Meritorious
Claims under Federal and State Law**

Plaintiffs will succeed on the merits of their claims for injunctive relief at trial by demonstrating that Defendant's indirect payment scheme violates the Affordable Care Act and its implementing regulations and Connecticut law.

The Affordable Care Act, 42 U.S.C. § 300gg-19a(b)(1)(ii)(I), provides that, if a health plan provides coverage for medically necessary emergency medical services rendered by network providers – as Defendant's health plans do – then it must provide similar coverage for medically necessary emergency medical services rendered by out-of-network providers.

In covering medically necessary emergency medical services rendered by out-of-network providers, insurers cannot impose any more restrictions or limitations on that coverage than apply to medically necessary emergency medical services rendered by network providers. 42 U.S.C. § 300gg-19a(b)(1)(ii)(I).

The regulations implementing the Affordable Care Act likewise provide that, in covering medically necessary emergency medical services rendered by out-of-network providers, it cannot impose "any administrative requirement or limitation on coverage that is more restrictive than the requirements or limitations that apply to emergency services received from in-network providers."    26 C.F.R.  §  54.9815-2719A(b)(2)(iii); *see also* 29 C.F.R.  §  2590.715-2719A(b)(2)(iii); 45 C.F.R. § 147.138(b)(2)(iii).

By refusing to provide reimbursement to Hartford HealthCare directly for the emergency services of its facilities and/or staff physicians, and by forcing patients who receive out-of-network emergency services to remit payment to Hartford HealthCare, Defendant is imposing an administrative requirement on Hartford HealthCare's claims that is substantially more restrictive than it does on claims for in-network emergency services.

This unfair administrative burden will fall on both the affected patients *and* Hartford HealthCare. Rather than paying Hartford HealthCare directly for the care it provides, Defendant will send "reimbursement" checks to patients, who, after suffering emergency medical conditions, will face the burden of collecting those checks, cashing them, and making arrangements to pay Hartford HealthCare themselves. This process is time consuming and fraught with the risk of lost checks, mispayments, and other issues. Patients will also have the responsibility to follow up with Defendant regarding unpaid or underpaid claims and to prosecute any necessary appeals. These obligations are especially onerous for a patient who recently received emergency health care services and is thus medically fragile and ill-equipped to handle them.

Defendant's actions will place a significant administrative burden on Hartford HealthCare in that it will be forced to wait a significant amount of time to receive reimbursement for services rendered, and will be required to undertake dramatically increased follow-up efforts to track down delayed, misplaced, lost, and pocketed checks, and to educate patients regarding their appeal rights. As such, Defendant's actions are a direct violation of the ACA and the regulations promulgated thereto.

Similarly, Connecticut General Statutes § 38a-477aa(b)(3)(A) provides that, if "emergency services [are] rendered to an insured by an out-of-network health care provider, such health care provider may bill the health carrier directly and the health carrier **shall** reimburse such health care provider." (emphasis added). The statute defines health care provider as "an individual licensed to provide health care services." *Id.* § 38a-477aa(a)(4).

Defendant has unequivocally announced that, starting October 1, 2017, it will no longer pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries.

Since, in three of Hartford HealthCare's hospitals – Hartford Hospital, the Hospital of Central Connecticut, and Backus Hospital – Hartford HealthCare bills include charges for emergency medical physician services as a part of a bundled rate, Defendant, by failing to directly pay those hospitals for the emergency medical services rendered to its members and beneficiaries, has violated Connecticut General Statutes § 38a-477aa(b)(3)(A).

Additionally, because patients routinely assign to Hartford HealthCare all rights they have as beneficiaries of Defendant's health plans, these assignments further obligate Defendant to reimburse Hartford HealthCare directly for covered health services it provides to these patients.

**B.**     **Plaintiffs Have Suffered, and**
        **Will Suffer, Irreparable Injury, Which**
        **Cannot Be Adequately Redressed by Money Damages**

Plaintiffs will demonstrate that they will suffer irreparable harm from Defendant's violation of state and federal law, and that monetary damages would be insufficient to remedy such harm. "Irreparable harm can be found where there is a continuing wrong which cannot be adequately redressed by final relief on the merits." *New York Pathological & X–Ray Laboratories v. Immigration and Naturalization Service*, 523 F.2d 79, 81 (2d Cir. 1975). Defendant has expressed its intent to provide payment to the patient, rather than Hartford HealthCare, in connection with *all* claims – *i.e.*, facility and professional claims – for emergency services.

Thus, Hartford HealthCare and its patients – including Carlos David Gonzalez – stand to suffer repeated violations of state and federal law. As stated above, Defendant's actions will

cause some patients to delay their emergency health care services or seek emergency health care services at other facilities. Defendant's actions will also breach the separation between treatment and financial issues that hospital staff needs to maintain positive relationships with patients that are focused on clinical issues and enabling patients to get well. By unnecessarily putting patients into the middle of reimbursement issues, Defendant is breaching this wall of separation and irreparably harming Hartford HealthCare's ability to maintain positive relationships with their patients.

This disruption in the relationship between Hartford HealthCare and its patients will cause irreparable harm, which may not be adequately remedied at law. *See Fairfield County Med. Ass'n v. United Healthcare of New England*, 985 F. Supp. 2d 262, 271 (D. Conn. 2013) (stating that "several district and circuit courts have found that disruption of the physician-patient relationship can cause irreparable harm" justifying the issuance of injunctive relief), *aff'd as modified sub nom. Fairfield County Med. Ass'n v. United Healthcare of New England, Inc.*, 557 F. App'x 53 (2d Cir. 2014); *Barron v. Vision Serv. Plan*, 575 F. Supp. 2d 825, 835-36 (N.D. Ohio 2008) (finding that disruption of relationship between optometrist and patients constituted irreparable harm, as failure to grant injunction would "cause significant harm that he likely cannot recoup").

Similarly, Defendant's indirect payment scheme also imposes substantial administrative burdens on Hartford HealthCare, which will be forced to divert substantial resources – resources that can, and should, be used to maintain and improve the health and welfare of its patients and the communities in which it provides services – to unnecessary tracking of reimbursement payments, assuaging confused patients' concerns, educating patients about appeal rights, and

making arrangements with sick patients to provide payments. This diversion of resources away from Hartford HealthCare's mission is substantial and irreparable.

Defendant's actions also needlessly put significant sums of money into the hands of patients who, because of behavioral health, addictive behavior, or substance abuse issues, are likely to misuse the money to place themselves or other in danger. Elderly patients – many of them homebound – will also be endangered by being forced to make needless visits to financial and other institutions to cash reimbursement checks, decipher complex explanation of benefit forms, and pay the Hospital.

Because of the continuing nature of Defendant's violation, which cannot be adequately remedied at law, the Court should find that both Hartford HealthCare and Mr. Gonzalez will suffer irreparable harm.

**C.     The Balancing of the Equities Tips
         In Favor of Injunctive Relief for Plaintiffs**

Moreover, the evidence presented at trial will demonstrate that the balance of equities weighs decidedly in Plaintiffs' favor. Hartford HealthCare's facilities and staff physicians are entitled to receive appropriate reimbursement for the emergency health care services that they provide to Defendant's plan members.

As stated above, Defendant's indirect payment scheme imposes a significant and unjust burden on Hartford HealthCare and its patients. Indeed, some patients will suffer substantial harm because they will choose to delay their emergency medical care, to seek care at hospitals farther away than Hartford HealthCare's facilities, or to seek care from an outpatient urgent care center when hospital care is medically necessary.

Defendant, on the other hand, has failed to provide a legitimate justification for providing payment to the patients, rather than to Hartford HealthCare directly – which it has done for years

– and thus would not suffer any harm by the issuance of an injunction. *See New York Pathological & X-Ray Labs*, 523 F.2d at 82 (balance of equities weighed in favor of appellants where "the appellees have made no showing whatsoever of any harm which will be visited upon them should the preliminary injunction issue"); *Main St. Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*, 103 F. Supp. 3d 244, 262 (N.D.N.Y. 2015) (balance of equities tipped in favor of granting injunction where plaintiffs stood to lose economic opportunities, but defendants did not stand to suffer the same harm); *Fairfield County Med. Ass'n v. United Healthcare of New England*, 985 F. Supp. 2d at 274 n.9 (balance of equities weighed in favor of plaintiff medical association where it demonstrated irreparable harm and defendant insurer offered no evidence of injury that it would suffer from the granting of injunctive relief).

**D.      Injunctive Relief Would Serve the Public Interest**

Finally, Plaintiffs will establish that the issuance of injunctive relief would not disserve the public interest.   To the contrary, it would advance the public interest by alleviating administrative burdens on Hartford HealthCare's patients throughout the State of Connecticut and increasing their access to emergency health care services.

Defendant's actions will cause patients harm by forcing them to take additional administrative steps to satisfy their financial obligations to Hartford HealthCare following their receipt of emergency health care services.   It will also causes a disruption in patient care, as some patients will choose to delay their emergency medical care, seek care at hospitals farther away than Hartford HealthCare's facilities, or seek care from an outpatient urgent care center when hospital care is medically necessary. *See Barron*, 575 F. Supp. 2d at 837 (finding that injunctive relief would serve the public interest by ensuring continuity of patient care, as finding a different in-network provider was a "task the elderly or disabled may find particularly difficult").

29

Defendant's actions will also transfer the obligation to follow up with Defendant for any unpaid or underpaid claims and to prosecute any necessary appeals from Hartford HealthCare to its patients. This undercuts the intent of the relevant provisions of the Affordable Care Act and Connecticut law, which is to provide patients with protection against substantial liability following their receipt of out-of-network emergency services. *See* 80 Fed. Reg. 72,192, 72,213 (Nov. 18, 2015) (stating that the "interim final [Affordable Care Act] regulations were developed to protect patients from being financially penalized for obtaining emergency services on an out-of-network basis.").

Accordingly, Plaintiffs will prove, at trial, that they are entitled to a permanent injunction prohibiting Defendant from issuing payment directly to its members and beneficiaries for the emergency medical services provided by Hartford HealthCare, and mandating that Defendant provide such reimbursement directly to Hartford HealthCare.

## POINT V

## PLAINTIFFS ARE ENTITLED TO DECLARATORY RELIEF

Additionally, based upon the evidence that will be adduced at trial, the Court should enter a Judgement declaring that Defendant's indirect payment scheme violates both the Affordable Care Act and Connecticut law. Pursuant to 28 U.S.C. § 2201, the Court is permitted to "declare the rights and other legal relations of any interested party seeking such declaration," in any case or controversy within its jurisdiction, "whether or not further relief is or could be sought." The Second Circuit has articulated a five-factor test as to whether the district court should entertain a request for declaratory relief, including: (i) "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved"; (ii) "whether a judgment would finalize the controversy and offer relief from uncertainty"; (iii) "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'"; (iv) "whether the use of a declaratory

30

judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; and (v) "whether there is a better or more effective remedy." *New York Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) (quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003)).

As discussed detail above, Defendant has unequivocally announced that, starting October 1, 2017, it will no longer pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries. Instead, Defendant will provide "reimbursement" to its members and beneficiaries, who will be forced to collect these checks, cash them, and make arrangements to pay Hartford HealthCare themselves. This process is time consuming and fraught with the risk of lost checks, mispayments, and other issues.

Defendant's indirect payment scheme violates the Affordable Care Act and its implementing regulations. Specifically, it places substantially greater restrictions and administrative burdens on claims for out-of-network emergency services than it does on claims for in-network services in contravention of 42 U.S.C. § 300gg-19a(b)(1)(ii)(I) and 26 C.F.R. § 54.9815-2719A(b)(2)(iii). This unfair administrative burden will fall on the affected patients, who, in addition to having to collect checks from Defendant and make arrangements to provide payment to Hartford HealthCare, will have the responsibility to follow up with Defendant regarding unpaid or underpaid claims and to prosecute any necessary appeals. These obligations are especially onerous for a patient who recently received emergency health care services and is thus medically fragile and ill-equipped to handle them. Defendant's actions will also place a significant administrative burden on Hartford HealthCare in that it will be forced to wait a significant amount of time to receive reimbursement for services rendered, and will be required

to undertake dramatically increased follow-up efforts to track down delayed, misplaced, lost, and pocketed checks, and to educate patients regarding their appeal rights.

Defendant's indirect payment scheme also violates Connecticut General Statutes § 38a-477aa(b)(3)(A), as the statute expressly permits health care providers to bill health insurers and receive benefits from them directly. Because, in three of Hartford HealthCare's hospitals – Hartford Hospital, the Hospital of Central Connecticut, and Backus Hospital – Hartford HealthCare bills include charges for emergency physician services as a part of a bundled rate, Defendant must provide payment directly to Hartford HealthCare for the emergency services provided at those hospitals.

In light of the foregoing, and the evidence that will be presented at trial, the Court should grant Plaintiffs a declaratory judgment pursuant to 28 U.S.C. § 2201. As a threshold matter, there is an imminent case or controversy between the parties. Defendant has refused to provide reimbursement directly to Hartford HealthCare for the emergency services that it provides to Defendant's members and beneficiaries. Indeed, Defendant has stated to this Court that it has not processed any claims for Hartford HealthCare's emergency services beginning on October 1, 2017 in light of the pending litigation. Moreover, as set forth above, Plaintiffs have a private right of action to challenge Defendant's indirect payment scheme under ERISA, the Affordable Care Act, Connecticut General Statues § 38a-477aa(b)(3)(A), and the common law.

Furthermore, Plaintiffs will demonstrate that the factors set forth by the Second Circuit in *Dow Jones* weigh in favor of granting a declaratory judgment. A declaratory judgment would both serve a useful purpose and finalize the controversy between the parties, as it would clarify Hartford HealthCare's right to receive reimbursement directly from Defendant, under federal and state law, for the emergency health care services that it provides to Defendant's members and

beneficiaries. It would also clarify Carlos David Gonzalez's right to receive emergency medical services from Hartford HealthCare – which has facilities close to his residence – without facing any greater restrictions, limitations, or administrative burdens on coverage than Defendant places on emergency services from network hospital. Likewise, because a declaratory judgment would provide finality to the parties' dispute, it would not merely serve as procedural fencing. Because the Court has supplemental jurisdiction over Hartford HealthCare's state law claims – and because Plaintiffs' rights under state and federal law substantially overlap – a declaratory judgment would not encroach upon the domain of state courts. Finally, absent the Court's issuance of injunctive relief, there is no better available remedy. Indeed, if the Court refuses to grant either declaratory or injunctive relief, then Plaintiffs would be forced to bring successive lawsuits under ERISA or the common law for each separate legal violation.

Accordingly, the Court should issue a judgment declaring that Defendant is required, under the Affordable Care Act and its implementing regulations and Connecticut law, to provide reimbursement directly to Hartford HeathCare for the out-of-network emergency health care services that it provides to Defendant's members and beneficiaries.

## CONCLUSION

For all of the foregoing reasons, and the evidence that will be adduced at trial, Plaintiffs respectfully request that the Court (a) issue a permanent injunction mandating that Defendant provide reimbursement directly to Hartford HealthCare for the emergency health care services provided to Defendant's members and beneficiaries; (b) enter a judgment declaring that Defendant's actions, as of October 1, 2017, in refusing to pay Hartford HealthCare directly for medically necessary emergency medical services that Hartford HealthCare provides to Defendant's members and beneficiaries violates the Affordable Care Act and its implementing

4641848v.2

regulations and Connecticut law; and (c) afford Plaintiffs such other and further relief as it deems

equitable, just, or proper.

Dated: Stamford, Connecticut
     October 19, 2016

GARFUNKEL WILD, P.C.
*Attorneys for Plaintiff*

By:      *  /s/ Roy W. Breitenbach*
          Roy W. Breitenbach [ct 28949]

350 Bedford Street, Suite 406A
Stamford, Connecticut 06901
Phone: (203) 316-0483
Fax: (203) 316-0493
*rbreitenbach@garfunkelwild.com*

34