## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| HARTFORD HEALTHCARE CORP., et al., | : | CIVIL ACTION NO. |
|     Plaintiffs, | : | 3:17-CV-1686 (JCH) |
|  | : |  |
|       v. | : |  |
|  | : |  |
| ANTHEM HEALTH PLANS, INC., | : | NOVEMBER 1, 2017 |
|     Defendant. | : |  |

### RULING RE: MOTION TO DISMISS AMENDED COMPLAINT (DOC. NO. 61)

## I.    INTRODUCTION

The plaintiffs, Hartford Healthcare Corporation, its affiliated hospitals, and patient Carlos David Gonzalez, filed the Amended Complaint against the defendant, Anthem Health Plans, Inc., on October 19, 2017.  See Amended Complaint ("Am. Compl.") (Doc. No. 42).  In it, the plaintiffs raise eight counts against Anthem under the Patient Protection and Affordable Care Act ("ACA"), Employee Retirement Income Security Act ("ERISA"), Connecticut statutes, and state contract and quasi-contract law.  See id.  On October 23, 2017, Anthem filed an Emergency Motion to Dismiss the Amended Complaint.  See Emergency Motion to Dismiss Amended Complaint ("Mot. to Dismiss") (Doc. No. 62).

For the reasons set forth below, Anthem's Motion to Dismiss is **GRANTED**, and the Amended Complaint is dismissed.

## II.    PROCEDURAL BACKGROUND

On October 5, 2017, the original plaintiffs, Hartford Healthcare Corporation and its affiliated hospitals, filed a Complaint against Anthem, advancing four counts in which they alleged that Anthem violated the Affordable Care Act ("ACA") and Conn. Gen. Stat.

§ 38a-477aa.  <u>See</u> Complaint ("Compl.") (Doc. No. 1).  The Complaint sought relief in the form of a declaratory judgment that Anthem had violated the aforementioned statutes and a permanent injunction to prohibit Anthem from reimbursing its members and instead to require it to make payments to Hartford Healthcare directly.  <u>See</u> <u>id.</u>  On the same day, the plaintiffs also filed a Motion for Preliminary Injunction and Temporary Restraining Order.  <u>See</u> Motion for Preliminary Injunction and Temporary Restraining Order (Doc. No. 9).  Pursuant to Federal Rule of Civil Procedure 65(a)(2), the court issued a Scheduling Order advancing the Motion for Preliminary Injunction to a bench trial on the merits to begin on November 1, 2017.  <u>See</u> Scheduling Order (Doc. No. 24) at 1.

Defendant Anthem filed an Emergency Motion to Dismiss on October 16, 2017. <u>See</u> Emergency Motion to Dismiss (Doc. No. 31).  Prior to responding to the Motion to Dismiss, the plaintiffs filed an Amended Complaint, in which they added as an additional plaintiff Carlos David Gonzalez, who alleges he is a member of a health plan governed by ERISA and for which Anthem serves as a claims administrator.  <u>See</u> Am. Compl. at ¶ 53.  In addition to the previous four counts under the ACA and Conn. Gen. Stat. § 38a-477aa, the Amended Complaint also added four additional counts—two under ERISA and two under state contract and quasi-contract law.  <u>See</u> <u>id.</u> at ¶¶ 87–149.

Defendant Anthem then filed an Emergency Motion to Dismiss the Amended Complaint on October 23, 2017, which is now the Motion before the court.  <u>See</u> Mot. to Dismiss.  In light of the pending Motion, the court held a Scheduling Conference on October 27, 2017, and converted the bench trial originally scheduled for November 1, 2017, into an oral argument on the merits of the motion, with trial to follow if the Motion

to Dismiss was denied.  The plaintiffs filed a Memorandum in Opposition to the Motion to Dismiss the Amended Complaint on October 31, 2017.  <u>See</u> Memorandum in Opposition to Motion to Dismiss Amended Complaint ("Mem. in Opp.") (Doc. No. 80).  The court heard oral argument on the Motion to Dismiss the Amended Complaint on November 1, 2017.

## III.    FACTS[1]

Hartford Healthcare is an integrated health system that includes the affiliated hospitals also named as plaintiffs.  <u>See</u> Am. Compl. at ¶¶ 7–12.  Anthem is a health insurance issuer in the state of Connecticut.  <u>See</u> <u>id.</u> at ¶¶ 21-23.  Until September 30, 2017, Hartford Healthcare was a network provider for Anthem, and Anthem reimbursed Hartford Healthcare directly for the benefits it provided to Anthem's members and beneficiaries.  <u>See</u> <u>id.</u> at ¶ 26.

The participating provider agreement between Hartford Healthcare and Anthem having expired, effective October 1, 2017, Hartford Healthcare became an out-of-network provider for Anthem.  <u>See</u> <u>id.</u> at ¶ 28.  Hartford Healthcare alleges that it decided not to renew the agreement because Anthem was only willing to renew under lower reimbursement rates that Hartford Healthcare considered unfair.  <u>See</u> <u>id.</u>  Anthem announced that, beginning October 1, 2017, it would no longer reimburse Hartford healthcare directly for benefits provided to Anthem members and beneficiaries.  <u>See</u> <u>id.</u> at ¶ 32.  Instead, Anthem would make those payments to its members and beneficiaries, who would pay Hartford Healthcare.  <u>See</u> <u>id.</u> at ¶ 33.

---

[1] The court accepts all factual allegations in the Amended Complaint as true for the purposes of a motion to dismiss.  <u>See</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71 (2d Cir. 2009).

Plaintiff Carlos David Gonzalez is a member of a health plan governed by ERISA; Anthem serves as the claims administrator for his plan.  See id. at ¶ 53. Gonzalez and his family members have received emergency care at Hartford Hospital in the past and anticipate doing so again in the near future.  See id. at ¶ 54.  The plaintiffs argue that patients, like Gonzalez, will suffer as a result of Anthem's new reimbursement procedure because they will have the responsibility of reviewing the benefits paperwork, depositing the reimbursement checks in their own bank accounts, arranging for payment to Hartford Healthcare, and pursuing any challenges and appeals for incorrect payments.  See id. at ¶¶ 42–44.  The plaintiffs allege that patients are ill-equipped to handle this process.  See id. at ¶ 45.  They argue that these burdens may cause patients "to delay their emergency medical care, to seek care at hospitals farther away than Hartford Healthcare's facilities, or to seek care from an outpatient urgent care center when hospital care is medically necessary," resulting in irreparable harm to the patients.  Id. at ¶ 46.

The plaintiffs also allege that Hartford Healthcare will suffer the following harms as a result of Anthem's new reimbursement procedure.  First, Hartford Healthcare will have to wait longer for reimbursements, with greater likelihood that payments may be lost because patients will act as a middleman.  See id. at ¶ 48.  Additionally, Hartford Healthcare will need to spend resources to monitor reimbursement payments, make payment arrangements with patients, and education them about appeal rights.  See id. at ¶ 49.  Finally, Hartford Healthcare will suffer a loss of income when patients choose to delay care or go to in-network hospitals.  See id. at ¶ 50.

**IV.     LEGAL STANDARD**

>    A.     Rule 12(b)(1) Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. Id. In contrast to Rule 12(b)(6), the court is not limited under Rule 12(b)(1) to the complaint itself, but may also consider evidence outside the pleadings, such as affidavits. Kamen American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986); DiCesare v. Town of Stonington, No. 15-CV-1703 (VAB), 2017 WL 1042056, at *1 (D. Conn. Mar. 17, 2017).

When the Rule 12(b)(1) motion is based solely on the complaint and its attached exhibits, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. See Carter v. Healthport Techs., LLC, 882 F.3d 47, 56–57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). However, when the defendant makes a fact-based Rule 12(b)(1) motion by introducing evidence beyond the pleadings, "the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." Carter, 882 F.3d at 57.

>    B.     Rule 12(b)(6) Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Under Rule 12(b)(6), to survive a motion to dismiss for failure to state a claim,

that plain statement must allege facts sufficient to state a plausible claim for relief. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). While this plausibility standard does not require probability, it is not satisfied by "a sheer possibility that a defendant has acted unlawfully" or by facts that are "merely consistent with a defendant's liability." <u>Id.</u> (internal quotation marks omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the court must accept all material factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>See</u> <u>Hemi Grp., LLC v. City of New York</u>, 559 U.S. 1, 5 (2010); <u>Jaghory v. N.Y. State Dep't Educ.</u>, 131 F.3d 326, 329 (2d Cir. 1997). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986); <u>Timm v. Faucher</u>, No. 3:16-CV-00531 (VAB), 2017 WL 1230846, at *6 (D. Conn. Mar. 31, 2017). In those instances, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678. The court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice should be taken." <u>Samuels v. Air Trans. Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993); <u>Borg v. Town of Westport</u>, No. 3:15-CV-1380 (AWT), 2016, WL 9001021, at *3 (D. Conn. Aug. 18, 2016).

## V.    DISCUSSION

The plaintiffs plead eight counts in the Amended Complaint.  <u>See</u> Am. Compl. Counts One, Two, Five, and Six assert federal causes of action under the ACA and ERISA.  <u>See</u> <u>id.</u>  Counts Three, Four, Seven, and Eight assert state law claims under Conn. Gen. Stat. § 38a-477aa and contract law.  <u>See</u> <u>id.</u>

Anthem raises a number of arguments for dismissing each of the plaintiffs' claims.  Specifically as to the plaintiffs' four federal causes of action, Anthem alleges (1) that the ACA does not provide plaintiffs a private cause of action; (2) that Hartford Healthcare lacks standing under ERISA; (3) that the plaintiffs seek remedies not covered by section 502(a)(1)(B) of ERISA because they are unrelated to benefits; (4) that Anthem, as a claims administrator, does not owe Gonzalez fiduciary obligations under ERISA; (5) that Anthem has not violated the ACA because the statute does not prohibit direct reimbursement to patients; and (6) that the plaintiffs have failed to show irreparable injury, as required for a permanent injunction.  <u>See</u> Defendant's Memorandum in Support of Motion to Dismiss Amended Complaint ("Mem. in Supp.") (Doc. No. 61-1).  Rather than address each of Anthem's arguments, which are numerous, the court finds it necessary to address only the fifth argument enumerated above because its resolution of that issue is sufficient to warrant the dismissal of all four of the plaintiffs' federal claims.

Thus, for purposes of this Motion to Dismiss, the court assumes, without deciding, that the preliminary issues of whether the plaintiffs have a private cause of

action and standing to bring the lawsuit are satisfied.[2]  Counts One, Two, Five, and Six are instead dismissed for failure to state a claim because Anthem has not violated the alleged section of the ACA by reimbursing patients rather than Hartford Healthcare.

A.     Subject Matter Jurisdiction

As a threshold matter, the court notes that it considers Anthem's Motion to Dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be based, not under Rule 12(b)(1) for lack of subject matter jurisdiction.[3]  As the plaintiffs allege in their Amended Complaint, pursuant to section 1331 of title 28 of the United States Code, the court has federal question jurisdiction over the plaintiffs' federal causes of action under the ACA and ERISA.  See 28 U.S.C. § 1331 (2016); Am. Compl. at ¶ 15. The court then has supplemental jurisdiction over the plaintiffs' remaining state causes of action that arise from the same case or controversy, pursuant to section 1367 of the same title.  See 28 U.S.C. § 1367 (2016); Am. Compl. at ¶ 16.

Anthem argues that the ACA does not provide a private cause of action and, therefore, the court lacks subject matter jurisdiction over the plaintiffs' claims for declaratory judgment, i.e. Counts One, Three, Five, and Seven.  See Mem. in Supp. at 20.  Specifically, a declaratory judgment action still requires an "actual controversy," and Anthem argues, "If the statute under which the plaintiff purports to sue does not provide

---

[2] In doing so, the court notes, however, that there are serious questions as to both of these issues.  The court's decision should not be read to imply that standing and cause of action are actually satisfied.

[3] The court recognizes that some other courts addressing the issue of lack of a private cause of action have done so as a jurisdictional matter under Rule 12(b)(1).  See Johnson v. Parker Hughes Clinics, No. CIV.04-4130 PAM/RLE, 2005 WL 102968, at *2 (D. Minn. Jan. 13, 2005); Leinwander v. Newman, Aronson & Neumann, 625 F. Supp. 1269, 1270–71 (S.D.N.Y. 1985).  This court considers the issue more appropriately to be a matter of a failure to state a claim under Rule 12(b)(6) for the reasons set forth in this section.  However, the court notes that, in its view, either approach results in the same outcome in this case.

the plaintiff with a private cause of action, there is no 'actual controversy' for the Court to decide and the Court lacks subject matter jurisdiction."  Mem. in Supp. at 20–21.

Leaving aside the merits of whether the ACA provides a private cause of action or not, the court notes that, even if the ACA provided no cause of action, the lack thereof would not create a jurisdictional problem.  In Bell v. Hood, the defendants argued that the court lacked federal jurisdiction because "petitioners could not recover under the Constitution or laws of the United States, since the Constitution does not expressly provide for recovery in money damages . . . and Congress has not enacted a statute that does so provide."  Bell v. Hood, 327 U.S. 678, 681 (1946).  The Court held, however, that "[j]urisdiction . . . is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."  Id. at 682.  The Second Circuit, relying on Bell, has held that "whether [a statute] provides an enforceable private right of action . . . does not implicate jurisdiction.  Rather, it is more aptly viewed as a question of whether the plaintiffs have failed to state a claim upon which relief may be granted."  Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 233 (2d Cir. 1999).  As the Declaratory Judgment Act does not provide an independent cause of action, there is precedent in this Circuit for applying the same analysis to actions for declaratory judgment, resulting in dismissal for failure to state a claim when federal law does not provide a cause of action.  See Garcia v. Nat'l Contractors Ins. Co., No. 15-CV-1332 CBA MDG, 2015 WL 7016968, at *1–3 (E.D.N.Y. Nov. 12, 2015); KM Enterprises, Inc. v. McDonald, No. 11-CV-5098 ADS ETB, 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012), aff'd, 518 F. App'x 12 (2d Cir. 2013).

Even the two cases that Anthem cites as "dismissing declaratory judgment action where plaintiff did not have private right of action" do so for failure to state a claim, not for lack of subject matter jurisdiction. Anthem cites <u>Dehaney v. Chagnon</u>, in which the court dismisses in an Initial Review Order the plaintiff's claim under the Prison Rape Elimination Act, which provides no private right of action. <u>See</u> Mem. in Supp. at 21; <u>Dehaney v. Chagnon</u>, No. 3:17-CV-308 (JAM), 2017 WI 2661624, at *4 (D. Conn. June 20, 2017). The court in <u>Dehaney</u> dismissed pursuant to section 1915A(b)(1) of title 28 of the United States Code, which permits dismissal if a claim "is frivolous, malicious, or fails to state a claim upon which relief may be granted," not for lack of subject matter jurisdiction. 28 U.S.C. § 1915A(b)(1) (2016); <u>see</u> <u>Dehaney</u>, 2017 WI 2661624, at *4. Similarly, Anthem cites <u>Aldi v. Wells Fargo Bank</u>, which also dismisses the plaintiff's declaratory judgment action because no private right of action exists but, in doing so, cites Rule 12(b)(6) for failure to state a claim, not Rule 12(b)(1). <u>See</u> Mem. in Supp. at 21; <u>Aldi v. Wells Fargo Bank</u>, No. 3:14-CV-89-WWE, 2015 WL 3650297, at *6–7 (D. Conn. Feb. 17, 2015).

Accordingly, even if Anthem prevailed on its argument that the ACA provides no private right of action, such an argument would not eliminate the court's subject matter jurisdiction over the case. Instead, the court treats the Motion to Dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

B. <u>Construction of the Affordable Care Act (Counts One, Two, Five, and Six)</u>

The court approaches Anthem's Motion to Dismiss by addressing the issue of whether Anthem's conduct—sending reimbursements to patients rather than directly paying Hartford Healthcare—violates the ACA and its implementing regulations because this issue resolves all of the plaintiffs' federal causes of action.

Counts One and Two allege causes of action directly under the ACA for declaratory and injunctive relief respectively. Section 300gg-19a(b)(1) of title 42 of the United States Code states,

> If a group health plan, or a health insurance issuer offering group or individual health insurance issuer [sic], provides or covers any benefits with respect to services in an emergency department of a hospital, the plan or issuer shall cover emergency services . . . in a manner so that, if such services are provided to a participant, beneficiary or enrollee . . . such services will be provided without imposing <u>any requirement under the plan for prior authorization of services or any limitation on coverage</u> where the provider of services does not have a contractual relationship with the plan for the providing of services that is more restrictive than the requirements or limitations that apply to emergency department services received from providers who do have such a contractual relationship with the plan . . . .

42 U.S.C. § 300gg-19a(b)(1) (2016) (emphasis added). The implementing regulations of this statute further state,

> If a group health plan, or a health insurance issuer offering group health insurance coverage, provides any benefits with respect to services in an emergency department of a hospital, the plan or issuer must cover the emergency services consistent with the rules of this paragraph (b). . . . If the emergency services are provided out of network, without imposing <u>any administrative requirement or limitation on coverage</u> that is more restrictive than the requirements or limitations that apply to emergency services received from in-network providers.

26 C.F.R. § 54.9815-2719A(b) (2016) (emphasis added); see also 29 C.F.R. § 2590.715-2719A(b) (2016); 45 C.F.R. § 147.138(b) (2016). The plaintiffs allege that this statute and the accompanying regulations create "a legal obligation to pay Hartford healthcare directly for medically necessary emergency services . . . so as to avoid the imposition of an administrative requirement on an out-of-network provider and its patients that is more restrictive, limiting, and burdensome than that imposed on network

providers." Am. Compl. at ¶¶ 57, 58, 65, 66. The plaintiffs argue that Anthem thus violated the ACA by refusing to pay Hartford Healthcare directly and instead paying reimbursements to patients. See id. at ¶¶ 57–62, 67–70.

Counts Five and Six allege causes of action under ERISA by incorporating the above subsection of the ACA. A statute within ERISA states, "[T]he provisions of part A of title XXVII of the Public Health Service Act (as amended by the Patient Protection and Affordable Care Act) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart." 29 U.S.C. § 1185d(a)(1) (2016). The plaintiffs argue that by violating an incorporated section of the ACA, Anthem has also violated ERISA. See Am. Compl. at ¶¶ 94–101, 111–20.

Thus, all four counts turn on whether Anthem's refusal to reimburse Hartford Healthcare directly is a violation of the ACA and its implementing regulations. To this end, the plaintiffs and defendant disagree on both the meaning of "limitation of coverage" within the statute and regulations, and the meaning of "administrative requirement" within the regulations only. The court is not aware of any precedent that has yet interpreted these terms in the context of either the statute or its implementing regulations, nor have either of the parties pointed to any case law to guide the court's interpretation. Accordingly, the court relies on the plain meaning and other appropriate rules of statutory construction to determine whether Congress intended Anthem's actions to be covered by the statute or not.

In construing a statute, the court begins first with the plain meaning of the text, and "if that text is unambiguous, it usually ends there as well." United States v. Gayle,

342 F.3d 89, 92 (2d Cir. 2003), <u>as amended</u> (Jan. 7, 2004) (quoting <u>Conn. Nat'l Bank v.</u> <u>Germain</u>, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'").  "The text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute."  <u>Saks v. Franklin</u> <u>Covey Co.</u>, 316 F.3d 337, 345 (2d Cir. 2003).  If the text is ambiguous, the court may also consider Congress's purpose in enacting the statute, as reflected in the legislative history, as well as other tools of statutory construction.  <u>See</u> <u>Gayle</u>, 342 F.3d at 93.

Looking first at the text of the statute, section 300gg-19a prohibits, with respect to emergency services, "any requirement under the plan for prior authorization of services or any limitation on coverage" that is more restrictive of out-of-network providers than in-network providers.  42 U.S.C. § 300gg-19a(b)(1)(C)(ii)(I).  The text therefore clearly lays out two areas of prohibition: requirements related to prior authorization, and limitations on coverage.  Had it so intended, Congress could have stated that insurers must eliminate all differences in its treatment of out-of-network providers and in-network providers for emergency services purposes, including payment, but Congress did not do so, instead choosing to prohibit only these two forms of restrictions.  The plaintiffs do not argue that paying patients rather than reimbursing the provider directly is a requirement of prior authorization, so the relevant inquiry before the court is whether the appropriate construction of "limitation on coverage" encompasses Anthem's payment reimbursement procedure for out-of-network providers.

The plaintiffs argue that "limitation on coverage" should be read to "include any practice that makes it more difficult for a plan member to reimburse a provider for for

[sic] health care services, such as Defendant's indirect payment scheme." Mem. in Opp. at 38. Anthem, on the other hand, argues that the plaintiffs' definition errs insofar as it defines "coverage" as broader than "what the plan covers." <u>See</u> Mem. in Supp. at 23. As such, Anthem argues that, "where the payment first goes simply bears no relation to whether a Member has coverage." <u>See</u> <u>id.</u> at 22. Because neither party cites case law to support their interpretation, both argue that their reading stems from the plain meaning of the words, as perceived by an ordinary person. <u>See</u> Mem. in Opp. at 38; Mem. in Supp. at 23.

The court agrees with the defendant that the plain meaning of the term "coverage" refers to the type or amount of benefits or services covered under a plan and does not include how the insurer pays for what it covers. In the insurance industry generally, courts have interpreted "coverage" to mean "the amount and extent of the risk [the insurer] contractually assumed." <u>In re Joint Eastern & Southern Dist. Asbestos Litigation</u>, 993 F.2d 313, 314 (2d Cir. 1993); <u>see also</u> <u>Johnson v. Life Investors Ins. Co. of Am.</u>, 216 F.3d 1087 (Table), at *5 (10th Cir. 2000); <u>Kearney v. Auto-Owners Ins. Co.</u>, No. 8:06-CV-00595-T-24-TGW, 2010 WI 3119380, at *5 (M.D. Fla. Aug. 4, 2010); <u>Black's Law Dictionary</u> 446 (10th ed. 2014) (defining "coverage" as "[i]nclusion of a risk under an insurance policy; the risks within the scope of an insurance policy"). In the healthcare context, these risks refer to the services and benefits included within the plan. This reading is further supported by the use of "coverage" elsewhere in the ACA

to refer to the benefits provided by the plan.  See 42 U.S.C. § 300gg-8 (2016); 42

U.S.C. § 300gg-13 (2016).[4]

This plain meaning definition of "coverage" in no way includes the method of

payment for the services covered.  Significantly, Anthem's plan members receive

coverage for the same benefits before and after October 1, 2017, and changing the

person or entity to whom the payments for those benefits are made does not affect the

types of services that members can receive and be reimbursed for.[5]  In contrast, the

plaintiffs' definition of "limitation on coverage" would reach too broadly, as any number

of considerations could make it more difficult for a patient to pay a provider, such as a

different appeals process or even something as simple as more complicated paperwork.

Such an expansive reading is not in keeping with the plain meaning of the term

"coverage."  Therefore, based on the plain meaning of the terms in the statute, the court

---

[4] Section 300gg-8 governs "Coverage for individuals participating in approved clinical trials."  42 U.S.C. § 300gg-8 (2016).  Under the subheading, "Limitations on coverage," it states, "This section shall not be construed to require a group health plan, or a health insurance issuer offering group or individual health insurance coverage, to provide benefits for routine patient care services provided outside of the plan's (or coverage's) health care provider network unless out-of-network benefits are otherwise provided under the plan (or coverage)."  Id. (emphasis added).  In this context, then, Congress appears to have used the term coverage to refer to the benefits it required the insurers to cover.

Although subsequently declared unconstitutional, when enacted, section 300gg-13 governed "Coverage of preventive health services."  42 U.S.C. § 300gg-13 (2016).  It stated, "A group health plan and a health insurance issuer offering group or individual health insurance coverage shall, at a minimum provide coverage for and shall not impose any cost sharing requirements for—" and then lists the services that must be covered.  Id. (emphasis added).  Again, Congress appears to have used the term "coverage" to refer to the services it required the insurers to cover.

[5] The plaintiffs argue that Anthem makes a false distinction between limitations prior to and after the member's receipt of services.  See Mem. in Opp. at 38.  However, the plaintiffs misunderstand Anthem's argument.  In the court's reading, Anthem's argument is that limitations imposed after Anthem has already determined that the services are covered cannot be limitations on coverage, since limitation cannot affect the coverage determination, which has already been made.  See Defendant's Response to Plaintiff's Trial Memorandum ("Def.'s Resp. to Pl.'s Trial Mem.") (Doc. No. 70) at 25.  Therefore, the important distinction is not before and after the receipt of services, but before and after the coverage determination.

finds that paying patients rather than reimbursing the provider directly is neither a "requirement . . . for prior authorization" nor a "limitation on coverage" under the statute.

As noted previously, the plain meaning of the text can further be clarified "by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." Saks, 316 F.3d at 345. In this context, section 300gg-19a(b)(1)(C)(ii) contains two subparts—subpart (I) address requirements for prior authorization and limitations on coverage, and subpart (II) addresses cost-sharing requirements. 42 U.S.C. § 300gg-19a(b)(1)(C). The treatment in the statute of cost-sharing requirements, which pertain specifically to the payment for benefits, separate from limitations on coverage strongly suggests that Congress did not consider cost-sharing requirements to be included within the meaning of "limitations on coverage." Otherwise, the need for a separate subsection addressing cost-sharing requirements would be redundant and unnecessary.

This distinction between limitations on coverage and cost-sharing requirements, as evidenced in the statutory context, is incompatible with the plaintiffs' definition of "limitation on coverage." If "limitation on coverage" is read to mean "any practice that makes it more difficult for a plan member to reimburse a provider for health care services," as the plaintiffs argue, see Mem. in Opp. at 38, then a cost-sharing requirement should be included within the definition, as cost-sharing requirements do make it more difficult for patients to pay for health services. However, the separate treatment of the two different subparts of the statute supports the conclusion that Congress did not intend the definition of coverage to encompass cost-sharing. Thus, the court rejects the plaintiffs' expansive definition. In contrast, no redundancy occurs

when the court accords "coverage" its plain meaning of the totality of benefits/services covered by the plan.

The plaintiffs, however, additionally argue that their reading of "limitation on coverage" is supported by the addition of the term "administrative requirement" in the implementing regulations.  See Mem. in Opp. at 39.  The three implementing regulations use slightly different language than the statute and prohibit "any administrative requirement or limitation on coverage."  26 C.F.R. § 54.9815-2719A(b); see also 29 C.F.R. § 2590.715-2719A(b); 45 C.F.R. § 147.138(b).  The plaintiffs argue that the regulation clarifies the meaning of the term "limitation on coverage" in the statute because "administrative requirement" goes beyond ordinary coverage limitations.  See Mem. in Opp. at 39.  Anthem argues to the contrary that "administrative requirement" must be read in context to "be confined to issues of 'coverage' of services."  Mem. in Supp. at 23.

The court agrees with the defendant's reading of "administrative requirement."  In interpreting the language of the regulation, the court is mindful that, where possible, the regulation should be read to be consistent with the statute that it purports to implement. See Carey . Local Bd. No. 2, 297 F. Supp. 252, 260 (D. Conn.), aff'd, 412 F.2d 71 (2d Cir. 1969) ("Interpretation of regulations so as to make law are not favored."); see also Ruiz v. Morton, 462 F.2d 818, 822 (9th Cir. 1972), aff'd, 415 U.S. 199 (1974) ("We note that an administrative agency, such as the bureau, has no power to create a rule or regulation that is out of harmony with the statutory grant of its authority."); Black v. United States, 25 Cl. Ct. 268, 273 n.11 (1992).  As such, the court is reluctant to read the regulation's language of "any administrative requirement" to place additional

restrictions on issuers that exceed the scope adopted by Congress in enacting the statute. An "administrative requirement" that violates the regulation, then, must still be an administrative requirement on coverage, as previously defined according to its plain meaning.

This reading is consistent with the structure of the regulations, which appear to address the statute's prohibition on prior authorization in subpart (b)(2)(i) and the statute's prohibition on limitations on coverage in this subpart (b)(2)(iii). See 26 C.F.R. § 54.9815-2719A(b); see also 29 C.F.R. § 2590.715-2719A(b); 45 C.F.R. § 147.138(b). The court found nothing in the agency's comments in the Federal Register, accompanying the publication of these final rules, to even suggest that the agency interpreted "administrative requirements" more broadly than intended by the statutory text.[6] Final Rules for Grandfathered Plans, Preexisting Condition Exclusions, Lifetime and Annual Limits, Rescissions, Dependent Coverage, Appeals, and Patient Protections Under the Affordable Care Act ("Final Rules"), 80 Fed. Reg. 72192-01 (Nov. 18, 2015). Because making payments to members rather than directly to the provider is not a requirement related to coverage, under this reading of the regulations, the Amended Complaint has not plausibly alleged a violation of the regulation.

---

[6] Under the heading "Additional Administrative Requirements," the agency comments state: "For a plan or health insurance coverage with a network of providers that provide benefits for emergency services, the plan or issuer may not impose any administrative requirement or limitation on benefits for out-of-network emergency services that is more restrictive than the requirements or limitations that apply to in-network emergency services." Final Rules, 80 Fed. Reg. at 72212. This language largely mirrors the regulation, but substitutes the word "benefits" for "coverage." As with the word "coverage," the court does not read the term "benefits" to include to whom the payment for those benefits should be paid. The comments provide no further guidance as to how "administrative requirements" should be interpreted.

Finally, the plaintiffs argue that Anthem's method of reimbursement places administrative burdens both on patients and on Hartford Healthcare in the form of time and resources required by the more complicated and taxing reimbursement process. See Mem. in Opp. at 39–40. Notably, however, they do not argue that these burdens would affect the coverage that patients receive for emergency services, only the hassle associated with utilizing those services. While Congress could have enacted language requiring insurers to treat out-of-network providers and in-network providers the same for the purposes of emergency services, it did not do so. That Congress did not do so supports the reading that the statute and regulations prohibit only the types of requirements and limitations indicated by the text—those related to prior authorization or to coverage. Therefore, while the court recognizes that the burden caused by Anthem's new reimbursement procedure may be substantial, it does not find that such a burden falls within the conduct prohibited by the ACA or its implementing regulations.

Thus, as a matter of law, the plaintiffs have not alleged facts sufficient to state a claim that Anthem has violated the ACA or its implementing regulations, and Counts One and Two are dismissed for failure to state a claim. Because the plaintiffs base their ERISA claims in Counts Five and Six on incorporation of the ACA into ERISA, Counts Five and Six are likewise dismissed.

C.     State Law Claims (Counts Three, Four, Seven, and Eight)

In addition to the dismissed federal claims, the plaintiffs also raise a number of claims under state law. Counts Three and Four allege that Anthem violated Conn. Gen. Stat. § 38a-477aa(b)(3)(A) and seek declaratory and injunctive relief respectively. See Am. Compl. at ¶¶ 74–86. Count Seven alleges that Anthem's failure to comply with the ACA and Connecticut statute constitutes a breach of contract with Hartford Healthcare,

as assignee of the rights of its patients who are members of Anthem's plans.  See id. at ¶¶ 124–36.  Count Eight alleges that Anthem's same actions also breached an implied-in-fact contract with Hartford Healthcare.  See id. at ¶¶ 137–49.[7]

Anthem raises a number of reasons to dismiss each of these state law claims.  However, the court does not reach the merits of these arguments and instead exercises its discretion to decline supplemental jurisdiction over these claims, pursuant to section 1367(c)(3) of title 28 of the United States Code.  See 28 U.S.C. § 1367(c)(3) (2016).  Section 1367(c)(3) permits a district court to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  Id.  The court here has dismissed all of the plaintiffs' federal claims under the ACA and ERISA.  The Second Circuit has instructed that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  In this case, the balance of factors, including judicial economy, convenience, fairness, and comity, point toward declining jurisdiction.  See id.  As the case is still in the early stages of litigation, significant judicial resources have not yet been expended in briefing and considering these state law claims, which are more appropriately decided by the state court.

Additionally, section 1367(c)(1) also allows a district court to decline supplemental jurisdiction if "the claim raises a novel or complex issue of State law."  28

---

[7] While Counts Seven and Eight incorporate issues of federal law through the ACA, the claims arise out of state law causes of action and do not form the basis for federal question jurisdiction.  See NASDAQ OMX Group, Inc. v. UBS Securities, LLC, 770 F.3d 1010, 1044 (2d Cir. 2014) (citing Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 814 (1986)).

U.S.C. § 1367(c)(1) (2016).  In this case, maintaining jurisdiction over Counts Three and

Four would require the court to determine whether Conn. Gen. Stat. § 38a-

477aa(b)(3)(A) creates a private cause of action.  As Connecticut state courts have not

yet addressed this issue, and this case presents a less-than straightforward issue of

bundled doctor and hospital charges, the court declines to answer this novel question of

state law unnecessarily.

For both the aforementioned reasons, the court declines to exercise

supplemental jurisdiction over the plaintiffs' remaining state claims, and Counts Three,

Four, Seven, and Eight are dismissed.

## VI. CONCLUSION

For the reasons state above, Anthem's Motion to Dismiss the Amended

Complaint (Doc. No. 61) is **GRANTED**, and the Amended Complaint is dismissed.

**SO ORDERED**.

Dated at New Haven, Connecticut this 1st day of November, 2017.

/s/ Janet C. Hall _____
Janet C. Hall
United States District Judge